[No. 32018.  *En Banc.*  December 26, 1952.]

THE STATE OF WASHINGTON, *Respondent,* v. RODNEY RAY-
MOND WEEKLY, *Appellant.*[1]

*Henry Opendack* and *Carl Maxey,* for appellant.

*Hugh H. Evans* and *Ellsworth I. Connelly,* for respondent.

[1]Reported in 252 P. (2d) 246.

OLSON, J.—This is an appeal from the judgment and sentence entered upon the verdict of a jury in the trial of defendant for the crime of attempted rape.

Upon arraignment, defendant pleaded not guilty. Later, he appeared with counsel and withdrew this plea and pleaded guilty to the charge. At a subsequent hearing, when he again appeared with counsel for sentence, he was questioned carefully by the court upon the basic facts of the charge against him. He admitted these facts, but, when the court was about to pronounce sentence and indicated that probation would not be granted, he requested and obtained leave to withdraw his plea of guilty and re-enter his plea of not guilty.

During the trial of the cause upon this plea, defendant testified in his own behalf. On cross-examination, counsel for the state asked him the following question: "Mr. Weekly, on the 3rd day of September, 1951, did you appear in Judge Greenough's court with your counsel, and enter a plea of guilty to this charge?"

Defendant's objection was sustained, and, upon his motion, the question was stricken and the jury instructed to disregard it. These rulings are not before us for review, and we need not and do not express any opinion on them.

Defendant contends that the court "erred in failing to declare a mistrial or to allow the appellant [defendant] to go into the facts involved after the state asked the question."

Basically, defendant's contention is that the question was so prejudicial that, by asking it, the state deprived him of a fair trial. While it is not so labeled by defendant, it is in fact a claim of misconduct of counsel for the state. To prevail on such a claim, defendant must show that counsel did not act in good faith, and that asking the question was in fact prejudicial. *State v. Whetstone*, 30 Wn. (2d) 301, 337, 191 P. (2d) 818 (1948).

The good faith of counsel can be tested by the following, among other inquiries: Was the question based upon facts established by the record? Was it material and relevant? Did counsel have any basis for a belief that the court

would overrule an objection to it? Did counsel abide the ruling of the court and not pursue the inquiry after the objection was sustained? Each of these questions must be answered in the affirmative in this case.

The record shows that the facts stated in question form were true. Defendant not only admitted the legal conclusion of guilt by his plea, but, in answer to inquiries by the court at that time, admitted the facts charged. These facts were material, and proof of their admission or confession was relevant to the issue.

When the objection was made, the jury was excused promptly. Counsel for the state asserted to the trial court that the question was not objectionable, and cited authority for his position. See *State v. Bringgold*, 40 Wash. 12, 82 Pac. 132 (1905), wherein this court held that a plea of guilty to a complaint in justice court was admissible against the defendant, in a trial in the superior court upon an information charging the same offense. That the rule advanced by the state is not universally followed, does not concern us here. It is sanctioned by respectable authority, in which the view is taken that such a plea is an admission which may be introduced in evidence against the accused. *People v. Steinmetz*, 240 N. Y. 411, 148 N. E. 597 (1925); *Rascon v. State*, 47 Ariz. 501, 512, 57 P. (2d) 304, 309 (1936); *People v. Cooper*, 81 Cal. App. (2d) 110, 118, 183 P. (2d) 67, 72 (1947), and cases cited. See discussion in 4 Wigmore on Evidence (3d ed.) 66, § 1067, and 1951 Supp., p. 26; Annotation, 124 A. L. R. 1527, 1532; Model Code of Evidence, p. 241.

No effort was made by counsel for the state to renew the matter by reframing his question or by a statement, in arguing the objection in the presence of the jury or otherwise, showing any intention to circumvent or disregard the court's ruling. The record plainly indicates that he acted in good faith.

■■ We cannot say that the trial court abused its discretion in deciding that the conduct of the deputy prosecutor was not prejudicial to defendant, and in denying defendant's motion for a new trial. To do so, we would have to assume

that the jury did not obey the court's instructions to disregard the question. This we will not do. Our assumption is that, when a question is asked and an objection sustained, a jury will understand that for some good and sufficient reason the court believed the question improper. *State v. Whetstone, supra*, p. 340.

This disposition of the case makes it unnecessary for us to consider the state's contention that the question was proper, and for that reason cannot be the basis of a successful claim of error.

■ Defendant further contends that he should have been permitted to explain the circumstances under which he made his plea of guilty. Viewing this plea as an admission against interest, the fact that it was made in open court certainly should not detract from the consideration it should receive. When an accused is confronted with any admission or confession, he may, if he affirms it, explain fully all the circumstances under which he claims it was made. But here no admission was before the jury for explanation. Defendant did not choose to waive his objection and offer any proof in this regard, or otherwise present this contention to the trial court. A claim of error of this nature, first asserted in this court, cannot be considered.

The judgment is affirmed.

SCHWELLENBACH, C. J., MALLERY, HILL, and GRADY, JJ., concur.

HAMLEY, J. (concurring in the result)—For the reasons stated in Judge Donworth's dissenting opinion, I favor overruling *State v. Bringgold*, 40 Wash. 12, 82 Pac. 132. However, there is not a majority on the court in favor of overruling that decision. The *Bringgold* decision therefore continues to state the law on the subject, and supports the judgment under review. Accordingly, I concur in the result reached by the majority.

WEAVER, J., concurs with HAMLEY, J.

DONWORTH, J. (dissenting)—I find myself unable to agree with the majority opinion in several particulars.

In my opinion, appellant was entitled to have the trial court declare a mistrial after the state had asked him if he had previously pleaded guilty to the same charge for which he was then being tried. The prejudicial effect of asking this question could not be cured by the court's striking it and instructing the jury to disregard it.

Here, the ultimate question for the jury to determine was whether the state had proved beyond a reasonable doubt that appellant was guilty of the offense with which he was charged. Permitting the state to ask him if he had pleaded guilty to the charge, although the question was stricken and the jury instructed to disregard it, could only result in the jury's getting the idea firmly in their minds that appellant had already admitted his guilt. Therefore, the jury would gain the impression that there was no need to further weigh the evidence in deciding that issue.

The purpose of asking a defendant upon arraignment whether he pleads guilty or not guilty is not to exact a confession in open court (if he pleads guilty). The object is to ascertain whether the defendant wishes to put the state to its proof of the facts alleged in the information or whether he wishes to waive a trial by jury and permit the court to find him guilty upon his plea and pronounce sentence without further proceedings.

There is no connection between his plea of guilty and a confession either in or out of court. A defendant may wish to plead guilty for any one of several reasons having nothing to do with his guilt. He may wish to spare his family the unfavorable publicity attendant upon a trial. He may, for private reasons, prefer to plead guilty rather than have his past paraded before the world. He may fear that a trial might result in a relative or friend being charged as an accessory or in the defendant's being charged with other crimes. These and other cogent reasons may impel a defendant who does not believe he is guilty to plead guilty and waive a public trial. Whatever his motive, this is his privilege whether he be guilty or not guilty. When his plea of guilty is withdrawn, it is wiped out and becomes a nullity for all purposes.

If the question may be asked whether he did not previously plead guilty to the charge, then, from a practical standpoint, there would be no use in a defendant's asking permission to withdraw a plea of guilty and enter a plea of not guilty because he is almost certain to be convicted. *Heim v. United States,* 47 App. D. C. 485, L. R. A. 1918E, 87.

As to the present state of the law relating to this subject, our only case on this point, *State v. Bringgold,* 40 Wash. 12, 82 Pac. 132 (decided in 1905), treats a plea of guilty before a justice of the peace as being the same as a confession made out of court and holds that it is admissible in evidence as such. Assuming, for our purposes, that there is no distinction between a felony and a misdemeanor, I think that the *Bringgold* case should be overruled and that we should adopt the modern majority rule which is to the contrary. See cases referred to in 124 A. L. R. 1527.

The supreme court of the United States considered this problem in *Kercheval v. United States,* 274 U. S. 220, 71 L. Ed. 1009, 47 S. Ct. 582, and reversed a conviction because evidence of a prior plea of guilty had been admitted. After referring to the two lines of authority upon the subject, the court, in holding such evidence inadmissible, said:

"We think that contention is sound. A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. When one so pleads he may be held bound. *United States v. Bayaud,* 23 Fed. 721. But, on timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence. Such an application does not involve any question of guilt or innocence. *Commonwealth v. Crapo,* 212 Mass. 209. The court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems fair and just. *Swang v. State,* 2 Coldw. (Tenn.) 212; *State v. Maresca,* 85 Conn. 509; *State v. Nicholas,* 46

Mont. 470, 472; *State v. Stephens,* 71 Mo. 535; *People v. Mc-Crory,* 41 Cal. 458, 461; *State v. Coston,* 113 La. 717, 720; Bishop's New Criminal Procedure, § 747.

"The effect of the court's order permitting the withdrawal was to adjudge that the plea of guilty be held for naught. Its subsequent use as evidence against petitioner was in direct conflict with that determination. When the plea was annulled it ceased to be evidence. By permitting it to be given weight the court reinstated it *pro tanto. Heim v. United States, supra,* 493 [47 App. D. C.] The conflict was not avoided by the court's charge. Giving to the withdrawn plea any weight is in principle quite as inconsistent with the prior order as it would be to hold the plea conclusive. Under the charge, if the plea was found not improperly obtained, the jury was required to give it weight unless petitioner was shown to be innocent. And if admissible at all, such plea inevitably must be so considered. As a practical matter, it could not be received as evidence without putting petitioner in a dilemma utterly inconsistent with the determination of the court awarding him a trial. Its introduction may have turned the scale against him. 'The withdrawal of a plea of guilty is a poor privilege, if, notwithstanding its withdrawal, it may be used in evidence under the plea of not guilty.' *White v. State, supra,* 290 [51 Ga.]."

In *People v. Street,* 288 Mich. 406, 284 N. W. 926, the court held that a mistrial should have been declared where the prosecutor commented on the defendant's former plea of guilty. In applying the rule of the *Kercheval* case, the Michigan court said:

"As was said by Mr. Justice Butler in *Kercheval v. United States, supra:*

" 'The withdrawal of a plea of guilty is a poor privilege, if notwithstanding its withdrawal, it may be used in evidence under the plea of not guilty.' ·

"See, also, *People v. Ryan,* 82 Cal. 617 (23 Pac. 121); *State v. Anderson,* 173 Minn. 293 (217 N. W. 351); *Dean v. State,* 72 Tex. Cr. 274 (161 S. W. 974). It would still remain a poor privilege if the prosecutor could comment upon such former plea.

"While it is impossible to analyze the processes of the human mind, we cannot say that the jury was not impressed with the statement that defendant had previously pleaded guilty. No matter how great an effort a juror might make not to let it prejudice him, *the statement was of such a nature*

*that it could not be eradicated from the average juror's mind by instruction of the judge.* See *People v. Hunter,* 218 Mich. 525; *People v. Ruggero,* 223 Mich. 368; *People v. Cowles,* 246 Mich. 429; *People v. Kolowich,* 262 Mich. 137. In fact, the more the judge discussed the plea, the more the average juror would be impressed with it. A mistrial should have been declared." (Italics mine.)

See, also, *Heim v. United States, supra.*

The logic of these cases appears to me to be unanswerable and should be adopted as the rule in this state.

But the majority say that we must assume that the jury obeyed the court's instruction to disregard the prosecutor's question and that, therefore, there was no abuse of the trial court's discretion in denying a mistrial. I must disagree with this holding because it is impossible to unring a bell. The vice of the question consisted in the mere asking of it. When the jury heard the prosecutor's question, the damage was done, and the prejudicial effect could not be erased by any instruction to the jury.

We have many times recognized situations where the only method of relieving a defendant from the effect of a prosecutor's misconduct was to grant a new trial.

Parenthetically, may I say that there is no indication in this case that the prosecutor acted in bad faith, because the *Bringgold* case furnished him authority for asking the question. However, the motives or good faith of the prosecutor are not material. The question is whether, on this record, appellant had a fair trial.

In *State v. Pryor,* 67 Wash. 216, 121 Pac. 56, where the jury had been instructed to disregard certain questions of the prosecutor as to other crimes than that charged in the information, this court, in ordering a new trial, said:

"It would be to the credit of the jury, rather than to its discredit, if, believing this testimony, it entertained a prejudice against the accused, ineradicable by any order striking the testimony, or by any instruction, however clear and forcible, to disregard it. A fair trial consists not alone in an observance of the naked forms of law, but in a recognition and a just application of its principles. It may be that the defendant is guilty. On that we express no opinion. It must

be remembered, however, that 'though unfair means may happen to result in doing justice to the prisoner in the particular case, yet, justice so attained, is unjust and dangerous to the whole community.' *Hurd v. People,* 25 Mich. 404."

A similar situation arose in *State v. Tweedy,* 165 Wash. 281, 5 P. (2d) 335, where the prosecutor sought to show that a witness subpoenaed by the defendant was then in jail. We granted a new trial, saying:

"It is obvious that the prosecuting attorney believed that bringing to the attention of the jury the fact that Newell was then lodged in the King county jail, would prejudice the appellant in the eyes of the jury and thereby better aid the state in procuring a conviction. The prosecuting attorney thrice ignored the rulings of the trial judge. His persistence in that regard, we are sure, was not intended as an exhibition of disrespect of the court, but indicates a belief on his part that the testimony would greatly assist him in discrediting the appellant before the jury. *We find this testimony was prejudicial, and that the injury or harm was not cured, even though stricken by the court and the jury instructed to disregard it.*" (Italics mine.)

We have even granted a new trial for misconduct of the prosecutor where no request was made by the defendant for an instruction to disregard the prosecutor's statement and no mistrial was asked. In *State v. Navone,* 186 Wash. 532, 58 P. (2d) 1208, we said:

"It is true that counsel for the defense might have then asked the court to instruct the jury to disregard the statements made, but, had that been done, it seems to us the virus could not have thus been removed. This question of character bears with peculiar force upon the issue of intent, and the character of appellants having been destroyed with a single blow, the jury, as ordinary men and women, must necessarily have been greatly influenced thereby in determining the issue of intent. *The ordinary direction to disregard could not restore the minds of the jurors to that fair and impartial state which the law requires.*" (Italics mine.)

*The mere asking* of an improper question by the prosecutor was held in *State v. Smith,* 189 Wash. 422, 65 P. (2d) 1075, to constitute reversible error and to entitle the defendant to a new trial.

A fair trial has been defined by this court as follows:

"The question involved is that of a fair and impartial trial. In *State v. Pryor*, 67 Wash. 216, 121 Pac. 56, this court said:

" 'A fair trial consists not alone in an observation of the naked forms of law, but in a recognition and a just application of its principles.'

"It is the law of the land, a right vouchsafed by the direct written law of the people of the state. It partakes of the character of fair play which pervades all the activities of the American people, whether in their sports, business, society, religion or the law. In the maintenance of government to the extent it is committed to the courts and lawyers in the administration of the criminal law, it is just as essential that one accused of crime shall have a fair trial as it is that he be tried at all, whether he be guilty or not, has his picture in the rogue's gallery or not. In the *Pryor* case just referred to, it was said that it must be remembered, as stated in *Hurd v. People*, 25 Mich. 404, 'that unfair means may happen to result in doing justice to the prisoner in the particular case, yet, justice so attained is unjust and dangerous to the whole community.' " *State v. Devlin*, 145 Wash. 44, 258 Pac. 826.

Similar statements appear in *State v. Robinson*, 24 Wn. (2d) 909, 167 P. (2d) 986, and *State v. Lindsey*, 27 Wn. (2d) 186, 177 P. (2d) 387.

I am of the opinion that the prosecutor's question, although stricken, was so prejudicial to appellant that no instruction to the jury could obviate its damaging effect. Merely asking it prevented appellant from having a fair trial.

We should overrule *State v. Bringgold, supra*, and, following the decisions cited herein, should reverse the judgment with instructions to grant appellant a new trial.

FINLEY, J., concurs with DONWORTH, J.

FINLEY, J. (dissenting specially)—I have signed and I am in accord with the dissenting opinion written by Judge Donworth. The views expressed therein, the logic of the cases cited, seem to me to be unanswerable. This is particularly true, if proper emphasis and effect are to be given

to the presumption of innocence as I see its basic import and function in the operation of our machinery of justice; furthermore, if the twin or identical concepts of fair play and fair trial are to be implemented consistently, and with due regard for their painstaking, case by case synthesis spanning several centuries of Anglo-American jurisprudence.

The majority opinion appears to me to make several unwarranted assumptions:

(a) That asking an accused if he had initially pled guilty to the criminal charge confronting him, is analogous to the use of a confession by the prosecution, and, therefore, not inappropriate;

(b) That the trial judge *in the case at bar,* by instructing the jury to disregard the prosecutor's question, effectively excised from the jurors' minds or blotted out any impressions or inferences that the accused was guilty, which impressions or inferences may have been generated by the asking of the dubious questions as to guilt; and consequently, that the accused cannot or should not complain;

(c) That the prosecutor did not act in bad faith, and that the accused is thereby somehow protected and should not complain.

To me, to state these propositions, is to disagree with them. The assumption or suggested analogy—that the asking of the question is comparable to the use of a confession—has the fundamental weakness of all argument by analogy. As to this, suffice it to say, as pointed out in the dissenting opinion of Judge Donworth, arraignment and plea is a requisite procedural step in criminal prosecution. Realistically, it bears little or no analogy to a confession by an accused. The basic considerations, circumstances, or factors relating to the two things may be quite different, and they are just too dissimilar to justify analogy.

The second assumption mentioned above—that the trial court's instruction prevented the jurors from considering the prosecutor's question—imputes a fine, surgical skill to the court in extracting possibly prejudicial matter from the

minds of the jurors. Attributing such skill to the court in this instance seems unjustified. It involves a materialistic or mechanistic approach and analysis of the problem on that basis. But we are here dealing with mental processes, which, as yet, have not been subjected to or reduced to precise metric weight or measurement. Actually, we do not know what went on in the minds of the jurors, or for that matter, what made any one of their minds tick. In fine, it is presumptive and just too subject to miscalculation and error in judgment to conclude, either that the jurors were influenced or that they were not influenced by the prosecutor's question. The only safe, sure course of action in the instant case is to permit a new trial. This will eliminate the imponderable problem of the effect the prosecutor's question may or may not have had upon the minds of the jurors.

As to the third assumption mentioned hereinbefore, that the prosecutor acted in good faith: His good faith, or lack of it, has little to do with the question of whether the accused's chances for acquittal were prejudiced before the jury. I approve and emphasize Judge Donworth's analysis and criticism of this aspect of the matter.

Changing a plea of guilty to one of not guilty is permitted and recognized as a right of an accused. During the trial, the accused is entitled fully and completely to the benefit of the so-called presumption of innocence. If the prosecutor is entitled to ask the accused whether he had initially pled guilty to the crime charged, what is left of the presumption of innocence—*State v. Bringgold,* 40 Wash. 12, 82 Pac. 132 (1905), to the contrary, notwithstanding?