STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JOHN BOONE, DEFENDANT-RESPONDENT.

Argued September 9, 1974—Decided November 7, 1974.

*Mr. Michael A. Graham,* Deputy Attorney General, argued the cause for appellant (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Graham,* of counsel and on the brief).

*Mr. John H. Ratliff,* Assistant Deputy Public Defender, argued the cause for respondent (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mr. Ratliff,* of counsel and on the brief).

The opinion of the Court was delivered by

PASHMAN, J. Defendant appealed his conviction to the Appellate Division challenging there the propriety of the trial court's failure to grant a mistrial after the jury learned of the defendant's prior guilty plea, later withdrawn by leave of court. The Appellate Division reversed. *State v. Boone,* 125 *N. J. Super.* 112 (App. Div. 1973). We granted the

State's petition for certification, 64 *N. J.* 310 (1973)[1] and we now affirm.

Following purchase of morphine from defendant and one Watson Dixon by a confidential informant, detectives of the Narcotics Division of the Paterson Police Force arrested defendant Boone and Dixon in the latter's parked automobile. A search of the car revealed 51 glassine envelopes of morphine which were concealed in the arm-rest.

The Passaic County Grand Jury indicted Boone and Dixon for possession of a controlled dangerous substance in violation of *N. J. S. A.* 24:21–20. Boone initially pleaded not guilty on April 29, 1971 but on June 8, 1971 he entered a guilty plea to the indictment before the Honorable Vincent C. Duffy, J. C. C. On July 14, 1971, however, Judge Duffy permitted Boone to withdraw his guilty plea and enter a substituted plea of not guilty.[2] Watson Dixon also entered a plea of guilty and was permitted to withdraw it. But Dixon elected to re-enter his guilty plea a few days before trial.

Boone was tried in September 1971 and was convicted by a jury on the charge of possession of morphine. He was sentenced to a term of three to five years in the State prison.

At his trial, Boone sought to prove that he was not in possession of the narcotics, and was in Dixon's automobile only briefly when the detectives made their arrest. To corroborate this version, Boone called Dixon as a defense witness. It was the State's position that the alternating entry and withdrawal of guilty pleas by both Boone and Dixon were

---

[1]The Passaic County prosecutor did not file a petition for certification. On September 24, 1973, however, the Attorney General moved before this Court to petition for certification so that this Court could review the Appellate Division's broad "exceptionless" rule.

[2]Unfortunately, the transcript of the hearing in which Boone withdrew his guilty plea is not part of the record. Consequently Judge Duffy's reasons for permitting the withdrawal are not available. At his trial, however, Boone was asked by the court why he withdrew his plea. His reply was that he withdrew his plea because he was not guilty.

merely a tactic to see who would "take the weight" for the crime.[3] In an attempt to impeach Dixon's testimony that he alone had possession of the narcotics, the State questioned him concerning the substituted pleas:

Q. You pleaded guilty to this charge once before, didn't you?
A. Yes.
Q. In September?
A. Yes.
Q. Then you changed your mind and decided not to plead guilty, isn't that right?
A. Right.
Q. Then you pleaded guilty again, a couple of days ago?
A. Yes.
Q. Now in September — withdraw that. When you pleaded guilty the first time, Mr. Boone also pleaded guilty, didn't he?
MR. OSOFSKY: I object, that is totally irrelevant.
THE COURT: I will sustain the objection.
MR. OSOFSKY: It is so prejudicial to this case.
MR. DONATO: Of course it's prejudicial.
MR. OSOFSKY: No, no.
MR. DONATO: The whole case is prejudicial.
THE COURT: The jury will disregard that.

After the completion of the State's cross-examination and a short re-direct by the defense, Boone's attorney moved for a mistrial on the basis of the disclosure of the defendant's guilty plea, which, in his judgment, created "an attitude in the minds of the jury that cannot be overcome." The court reserved decision on the motion. After the verdict, Boone's

---

[3]During the course of cross-examination, the prosecutor asked Dixon the following questions:
Q. Did you discuss your testimony with Mr. Boone?
A. No I didn't.
Q. You never talked it over with Mr. Boone?
A. No.
Q. Isn't it a fact that you are going to take the weight for this case?
A. What do you mean by take the weight?
Q. You are going to take the entire blame for the narcotics, so as to exonerate Mr. Boone?

counsel renewed his motion for mistrial which the court then denied.

On appeal, the defendant contended, *inter alia,* that the trial court erroneously denied his motion for a mistrial and that error was of constitutional proportion. The Appellate Division recognized that it could be argued that a plea is in the nature of an admission, or if withdrawn, a prior inconsistent statement, but nonetheless reversed and remanded the case for a new trial. Following the reasoning first set forth almost 50 years ago by the United States Supreme Court in *Kercheval v. United States,* 274 *U. S.* 220, 47 *S. Ct.* 582, 71 *L. Ed.* 1009 (1927), the court held that withdrawn guilty pleas are not admissible in evidence. *State v. Boone, supra,* 125 *N. J. Super.* at 114.

Although the State initially conceded before the Appellate Division that New Jersey "follows the rule that a withdrawn plea of guilty is not admissible in evidence,"[4] the State now contends that the prosecution should be allowed to introduce evidence of a withdrawn guilty plea. The State argues that the plea should be admissible both in its case in chief, on the theory that the plea amounts to a declaration against the declarant's penal interest, *Evid. R.* 63 (10),[5] and to impeach a defendant who takes the stand at his trial on the

[4]The State, however, sought to avoid the application of the principle to the present facts, by arguing that in the instant case the evidence of the withdrawn plea was not admitted into evidence since the witness never answered the question and the trial court instructed the jury to disregard the question.

[5]A statement is admissible if at the time it was made it was so far contrary to the declarant's pecuniary or proprietary interest or so far subjected him to a civil or criminal liability or so far rendered invalid a claim by him against another or created such a risk of making him an object of hatred, ridicule or social disapproval in the community that a reasonable man in his position would not have made the statement unless he believed it to be true, except that such a statement is not admissible against a defendant other than the declarant in a criminal prosecution.

theory that the withdrawn plea is inconsistent with his present claim of innocence.

■ At the outset it should be observed that while rules of court preclude the use in subsequent criminal prosecutions of guilty pleas not accepted and offers to plead to lesser offenses, there is no rule which governs the inadmissibility of pleas which are accepted and later withdrawn with court approval.[6] Nor does it appear that this Court has considered the problem in the context of criminal prosecutions other than for murder.[7] The issue is novel in our State. However, it has been considered by the courts of other jurisdictions with varying results. *See generally* Annotation, "Propriety and Prejudicial Effect of Showing, in Criminal Case, Withdrawn Guilty Plea," 86 *A. L. R.* 2d 326 (1962).

---

[6]*R.* 3:9-2 provides in part:

A defendant may plead only nonvult or not guilty to an indictment for a crime punishable by death. As to all other offenses the defendant may plead only guilty or not guilty. The court in its discretion may refuse to accept a plea of non vult, or guilty, and shall not accept such plea without first addressing the defendant personally and determining by inquiry of the defendant and others, in the court's discretion, that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea and that there is a factual basis for the plea. For good cause shown the court may, in accepting a plea of guilty, order that such plea not be evidential in any civil proceeding. If a plea of guilty is refused, no admission made by the defendant shall be admissible in evidence against him at the trial.

*Evid. R.* 52(2) provides:

Evidence that the defendant offered to plead guilty to a lesser offense or upon terms, is inadmissible against him in that criminal proceeding.

[7]Three prior cases, one from this Court and two from the Court of Errors and Appeals, considered the question of evidence of prior guilty pleas, but all three cases involved murder prosecutions. In the latter context, statutes preclude the acceptance of a guilty plea, and consequently the murder cases are *sui generis*. *See Goodlet v. Goodman*, 34 *N. J.* 358 (1961), *cert.* den., 368 *U. S.* 855, 82 *S. Ct.* 92, 7 *L. Ed.* 2d 52 (1961); *State v. Leaks*, 124 *N. J. L.* 261 (E. & A. 1940); *State v. Smith*, 109 *N. J. L.* 532 (E. & A. 1932).

44

The leading case in this area is *Kercheval v. United States, supra,* upon which the Appellate Division relied. *Kercheval* was a federal mail fraud prosecution in which the defendant received a three year sentence after pleading guilty. Following sentencing the defendant petitioned the court for permission to withdraw his plea on the ground that he had been promised a lighter sentence by the prosecution. The court permitted the withdrawal, but in the subsequent trial, the prosecution was allowed to introduce the guilty plea in its case in chief. The court instructed the jury to consider the plea as evidence of guilt only if it found that it was not induced by promises of leniency. The jury found the defendant guilty and the Court of Appeals affirmed. *Kercheval v. United States,* 12 *F.* 2d 904 (8 Cir. 1926).

The Supreme Court, however, reversed, establishing a broad exclusionary rule against the use of withdrawn pleas in the federal courts. In reaching its decision the Court emphasized the incompatibility between use of the plea as evidence and the privilege of withdrawal.

The effect of the court's order permitting the withdrawal was to adjudge that the plea of guilty be held for naught. Its subsequent use as evidence against petitioner was in direct conflict with that determination. When the plea was annulled it ceased to be evidence. By permitting it to be given weight the court reinstated it pro tanto. * * * As a practical matter, it could not be received as evidence without putting petitioner in a dilemma utterly inconsistent with the determination of the court awarding him a trial. Its introduction may have turned the scale against him. "The withdrawal of a plea of guilty is a poor privilege, if, notwithstanding its withdrawal, it may be used in evidence under the plea of not guilty." 274 *U. S.* at 224, 47 S. Ct. at 583, 71 *L. Ed.* at 1012 (citations omitted).

The Court concluded that the "weight of reason" precludes introduction of the withdrawn guilty plea at the subsequent trial. 274 *U. S.* at 225, 47 *S. Ct.* 584, 71 *L. Ed.* at 1013.

In general, the state courts which have considered the problem in the wake of *Kercheval* have excluded any reference to the withdrawn guilty plea, in some instances overruling earlier cases which permitted admission. *See, e. g., State v.*

*Wright,* 103 *Ariz.* 52, 436 *P.* 2d 601 (1968) overruling *Rascon v. State,* 47 *Ariz.* 501, 57 *P.* 2d 304 (1936); *People v. Quinn,* 61 *Cal.* 2d 551, 39 *Cal. Rptr.* 393, 393 *P.* 2d 705 (1964); *People v. Haycraft,* 76 *Ill. App.* 2d 149, 221 *N. E.* 2d 317 (App. Ct. 1966); *State v. Joyner,* 228 *La.* 927, 84 *So.* 2d 462 (1955); *State v. Reardon,* 245 *Minn.* 509, 73 *N. W.* 2d 192 (1955); *People v. Spitaleri,* 9 *N. Y.* 2d 168, 212 *N. Y. S.* 2d 53, 173 *N. E.* 2d 35 (1961) overruling *People v. Steinmetz,* 240 *N. Y.* 411, 148 *N. E.* 597 (1925); *Perry v. State,* 84 *Okl. Cr.* 211, 181 *P.* 2d 280 ('Crim. App. 1947); *State v. Thomson,* 203 *Or.* 1, 278 *P.* 2d 142 (1954); *Brooks v. State,* 187 *Tenn.* 67, 213 *S. W.* 2d 7 (1948), *cert.* denied 340 *U. S.* 837, 71 *S. Ct.* 21, 95 *L. Ed.* 614 (1950). *See also* ABA Project on Minimum Standards for Criminal Justice, *Standards Relating to Pleas of Guilty,* § 2.2 (Approved Draft 1968).

Various arguments have been advanced to justify the exclusion of withdrawn pleas. In *People v. Quinn, supra,* for example, the Supreme Court of California observed that the majority of recent cases have held withdrawn pleas to be inadmissible. In the course of the opinion, the court summarized the major reasons which it gleaned from the cases prohibiting use of the plea:

(1) an order withdrawing a plea of guilty annuls the plea for all purposes * * *;
(2) admission of the plea violates the privilege against self-incrimination * * *;
(3) a plea of guilty is not within the admission exception of the hearsay rule, for it is often based on motives other than admitting guilt * * *; and
(4) admitting the plea into evidence is inconsistent with the privilege to obtain its withdrawal * * *.
39 Cal. Rptr. at 396, 393 *P.* 2d at 708 n. 2 (citations omitted).

■ We find, as did the California court, that the final reason is most persuasive. The privilege of withdrawal is indeed a hollow one if evidence of the guilty plea can be used against the defendant in a subsequent trial. In our view, basic

considerations of fairness require that when a defendant is permitted to withdraw his guilty plea, he must be returned to the same status that he occupied before the plea was entered. Anything less than this seriously undermines the policies behind allowing a withdrawal. In this respect the views of Judge Lehman of the New York Court of Appeals, dissenting in *People v. Steinmetz, supra,* are particularly apt:

> When the state allows a man a trial, the trial should be fair; when the court decides that in the interests of justice a plea may be withdrawn because there would be possible danger of injustice in acting upon it, the accused should be placed in the same position as if the plea had never been made. * * * The favor accorded the accused should not be transformed into a trap. 148 *N. E.* at 601 (Lehman, J., dissenting).

The State, however, argues that evidence of a prior guilty plea should be admissible under *Evid. R.* 63(10) as a declaration against the penal interest of the declarant. As tempting as this analogy may be, it overlooks a fundamental difference between admissions (or declarations against interest) and guilty pleas. In *Kercheval, supra,* the Supreme Court considered and rejected this analogy:

> A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. 274 *U. S.* at 223, 47 *S. Ct.* at 583, 71 *L. Ed.* at 1012.

Many of the cases decided since *Kercheval* have also rejected the confession analogy. *See, e. g., State v. Wright, supra,* 436 *P.* 2d at 605; *Perry v. State, supra,* 181 *P.* 2d at 290–291.

Alternatively, the State urges this Court to adopt the view that withdrawn pleas are admissible to impeach the credibility of the defendant who elects to testify at his trial. In support of this argument, the State cites *Harris v. New York,* 401 *U. S.* 222, 91 *S. Ct.* 643, 28 *L. Ed.* 2d 1 (1971).

In *Harris,* the Supreme Court permitted the prosecution to use statements made by the the defendant in conceded vio-

lation of his *Miranda* rights for impeachment purposes when the defendant took the stand in his own defense. In reaching its conclusion, the Court stated that "The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." 401 *U. S.* at 226, 91 S. Ct. at 646, 28 *L. Ed.* 2d at 5. The State in the present case believes that this same concern for ferreting out the truth is applicable in the context of withdrawn guilty pleas. In the State's view a defendant who elects to testify at his trial should be stringently cross-examined, and that cross-examination should include questions about a prior guilty plea.

In the context of the present case, however, there is a short answer to the *Harris* analogy. *Harris* and *Walder v. United States,* 347 *U. S.* 62, 74 *S. Ct.* 354, 98 *L. Ed.* 503 (1954), upon which the Court relied, both involved impeachment of defendants who elected to testify at trial. In contrast, the offending reference to the defendant's withdrawn plea in the present case was elicited by the prosecution in cross-examination of a witness other than the defendant, *i. e.,* Watson Dixon. Thus the central premise of both *Harris* and *Walder,* a judicial aversion to the possibility of perjury by defendants on direct examination, is absent in the instant case.

But there are more fundamental reasons for rejecting the analogy to *Harris* in this context. Once again it is crucial to distinguish a former plea of guilty from an incriminating statement made in violation of *Miranda* or evidence seized illegally. The problem with revealing a prior guilty plea to the jury is that it is too prejudicial, and it "may induce the jury to become reckless in its consideration of the other evidence." *State v. Thomson, supra,* 278 *P.* 2d at 150 (Rossman, J. concurring). The privilege to withdraw such a plea is surely an empty one and becomes a trap if it may be used in evidence.

The devastating effect of disclosure of a prior guilty plea to a jury was discussed by the court in *People v. Haycraft,*

*supra.* In concluding that any evidence of a withdrawn guilty plea must be excluded, the court observed:

> It is also difficult to conceive a disclosure more apt to influence a jury than the information that the accused had at one time pled guilty to the commission of the crime with which he stands charged. * * * The human mind is not a blackboard from which unwanted information can be erased at will. We can think of nothing more damaging to an accused in the minds of the jury than the disclosure, however brief, that he had admitted guilt . . . and once that disclosure has been made we cannot say that he has received the fair and impartial trial to which he is entitled. 221 *N. E.* 2d at 319.

In view of the virtually conclusive effect that evidence of a guilty plea will have on a jury, it is difficult to permit the "limited use" of such evidence for impeachment purposes.

Nor is it any answer to argue that the trial courts can insure that evidence of a withdrawn plea is not misused by the jury by issuing cautionary instructions. There are undoubtedly situations in which notwithstanding the most exemplary charge, a juror will find it impossible to disregard such a prejudicial statement[8]. We hold that this is one such situation. In this respect it is well to recall the oft quoted observations of Justice Jackson concurring in *Krulewitch v. United States,* 336 *U. S.* 440, 453, 69 *S. Ct.* 716, 723, 93 *L. Ed.* 790, 799 (1949), "The naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction " (Citations omitted).

---

[8] In *People v. Street,* 288 *Mich.* 406, 284 *N. W.* 926 (1936), the Court reversed a conviction based on prosecutorial commentary on a former guilty plea. In discussing the effect of such a disclosure on the jury, the court said:

> While it is impossible to analyze the processes of the human mind, we cannot say that the jury was not impressed with the statement that defendant had previously pleaded guilty. No matter how great an effort a juror might make not to let it prejudice him, the statement was of such a nature that it could not be eradicated from the average juror's mind by instruction of the judge. 284 *N. W.* at 927.

There is a final reason for rejecting the State's *Harris* analogy. As the State concedes, there are often reasons other than guilt which prompt an accused to enter a guilty plea. In *Brady v. United States,* 397 *U. S.* 742, 90 *S. Ct.* 1463, 25 *L. Ed.* 2d 747 (1970), for example, the Supreme Court held that a guilty plea entered to avoid a possible death sentence was not thereby automatically rendered involuntary, but suggested other reasons why defendants may choose to plead guilty. In the Court's view "the post-indictment accumulation of evidence may convince the defendant and his counsel that a trial is not worth the agony and expense to the defendant and his family." 397 *U. S.* at 750, 90 *S. Ct.* at 1470, 25 *L. Ed.* 2d at 757. *See also North Carolina v. Alford,* 400 *U. S.* 25, 91 *S. Ct.* 160, 27 L. Ed. 2d 162 (1970).[9] Allowing cross-examination as to a plea which may not have been prompted by the accused's belief in his guilt but rather the possibility of a lighter sentence hardly seems to further the integrity of the fact finding process. In any event the potential for prejudice to the defendant over-

---

[9] In *State v. Weekly,* 41 *Wash.* 2d 727, 252 *P.* 2d 246 (1952), Justice Donworth dissented from the prevailing opinion which affirmed the denial of a mistrial when the defendant was asked if he had previously pleaded guilty to the charge. In expressing his view that the question was so prejudicial to the defendant that no instruction could cure it, Justice Donworth gave a more complete catalog of reasons why a guilty plea cannot be equated with a confession:

A defendant may wish to plead guilty for any one of several reasons having nothing to do with his guilt. He may wish to spare his family the unfavorable publicity attendant upon a trial. He may, for private reasons, prefer to plead guilty rather than have his past paraded before the world. He may fear that a trial might result in a relative or friend being charged as an accessory or in the defendant's being charged with other crimes. These and other cogent reasons may impel a defendant who does not believe he is guilty to plead guilty and waive a public trial. Whatever his motive, this is his privilege whether he be guilty or not guilty. When his plea of guilty is withdrawn, it is wiped out and becomes a nullity for all purposes. 252 *P.* 2d at 249 (Donworth, J., dissenting).

shadows the utility of the plea as an aid in cross-examination of defendants who testify in their own defense.

Our examination of the authorities from other jurisdictions and the arguments advanced both for and against admission into evidence of withdrawn guilty pleas, convinces us that the highly prejudicial potential of such evidence mandates its exclusion for all purposes. We believe that this result is compelled by the weight of reason and authority as well as considerations of basic fairness in the trial process. Any statements to the contrary in *State v. Hand,* 71 *N. J. L.* 137 (Sup. Ct. 1904) and *State v. Baumgartner,* 21 *N. J. Super.* 348 (App. Div. 1952) are expressly disapproved.

*For affirmance*—Chief Justice HUGHES and Justices JACOBS, HALL, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD—7.

*For reversal*—None.