656 A.2d 53

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. EFRAIN RODRIGUEZ, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 21, 1995—Decided April 11, 1995.

Before Judges LANDAU, CONLEY and NEWMAN.

*Susan L. Reisner,* Public Defender, attorney for appellant *(Linda Mehling,* Assistant Deputy Public Defender, of counsel and on the letter brief).

*Deborah T. Poritz,* Attorney General, attorney for respondent *(Gerard C. Sims, Jr.,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

CONLEY, J.A.D.

Defendant was indicted on two counts of fourth-degree theft, *N.J.S.A.* 2C:20–3. Pursuant to a plea bargain in which the State agreed not to seek incarceration, he admitted under oath to the theft. That plea was thereafter withdrawn. We are not told why. A second guilty plea was again offered, during which defendant under oath again admitted to the theft. The plea bargain was similar to the first but at the time of sentencing the trial judge rejected the offer in light of defendant's extensive prior record of which, apparently, the State was not aware at the time of either plea. Subsequently defendant was tried by a jury. After the State presented its case and the trial judge inquired as to whether defendant was going to testify, the following colloquy occurred:

[Defense counsel]: We're in a bit of a quandary here. One of the problems is that on 2 occasions, Mr. Rodriguez has tried to enter a plea of guilty in return for a probationary sentence. On each of those occasions, he was put under oath and indicated that he, in fact, committed the crime.

Now he's given the opportunity to be put under oath, and he indicates to me he wants to tell the truth, that he did not commit the crime. And I've advised him that such a circumstance, although he can't be cross-examined on what was said at the time of the pleas, at a later date, there's a potential for a perjury charge. And that seems to be complicating the situation.

I mean, they waved the carrot in front of him and said, "You don't have to go to ill [sic] gentleman. All you have to do is tell us that you committed the crime."

He went for the carrot, and they took it away.

And now he has a problem about testifying in this case.

Now, if we had some assurances that he wasn't going to be charged with perjury down the road, he would rush to the stand, I believe, but I'm not sure where we're going to go from here.

THE COURT: I'm not either.

[The Prosecutor]: I'm not going to make ... I'm not going to make any assurance as to perjury charges at all. I wouldn't do that. I don't think I'm capable of doing that.

Defendant did not testify. He was convicted of one count of fourth-degree theft and a custodial term of eighteen months was imposed along with the required Violent Crimes Compensation Board penalty and restitution of $310.

On appeal, defendant raises the following contentions:

POINT I

DEFENDANT WAS DENIED A FAIR TRIAL BECAUSE HE WAS EFFEC-TIVELY BARRED BY THE PROVISIONS OF *N.J.R.E.* 410 FROM TESTI-FYING ON HIS OWN BEHALF. HIS CONVICTION THEREFORE SHOULD BE REVERSED AND THIS COURT SHOULD DIRECT THAT, IF HE TESTIFIES AT HIS NEW TRIAL, THE STATE WILL BE BARRED FROM PROSECUTING HIM FOR PERJURY OR FALSE SWEARING FOR ANY INCONSISTENCIES BETWEEN HIS TRIAL TESTIMONY AND HIS FACTUAL BASES AT HIS GUILTY PLEAS. (*U.S. CONST.*, AMENDS. V, VI, XIV; *N.J. CONST.* (1947), ART. I, PARAS. 1, 10).

A. *N.J.R.E.* 410 Effectively Barred Defendant From Exercising His Constitutional Right To Testify On His Own Behalf.

B. Since Defendant Was Not Advised When He Entered His Guilty Pleas That He Could Be Prosecuted For False Swearing Or Perjury, He Should Be Granted A New Trial At Which He Can Testify Without Fear Of Subsequent Prosecution.

C. Conclusion.

*POINT II*

OUTSIDE INFLUENCES INTRUDING UPON THE JURY'S DELIBERA-TIONS VIOLATED DEFENDANT'S RIGHT TO AN IMPARTIAL JURY UNDER THE UNITED STATES AND NEW JERSEY CONSTITUTIONS; ACCORDINGLY, DEFENDANT IS ENTITLED TO A NEW TRIAL. (*U.S. CONST.*, AMENDS. VI; XIV; *N.J. CONST.* (1947), ART. 1, PARA. 10) (NOT RAISED BELOW).

## I.

Defendant contends in Point I that his statements in connection with his guilty pleas and the risk of a potential perjury

prosecution arising from inconsistent trial testimony, *see N.J.R.E.* 410(2)[1], impermissibly chilled his constitutional right to testify. We disagree. A defendant does not have a constitutional right to commit perjury. *See Nix v. Whiteside,* 475 *U.S.* 157, 173, 106 *S.Ct.* 988, 997, 89 *L.Ed.*2d 123 (1986) ("[w]hatever the scope of a constitutional right to testify, it is elementary that such a right does not extend to testifying falsely"); *accord, United States v. Apfelbaum,* 445 *U.S.* 115, 117, 100 *S.Ct.* 948, 950, 63 *L.Ed.*2d 250 (1980) ("proper invocation of the Fifth Amendment privilege against compulsory self-incrimination allows a witness to remain silent, but not to swear falsely...."); *Harris v. New York,* 401 *U.S.* 222, 225, 91 *S.Ct.* 643, 645, 28 *L.Ed.*2d 1 (1971) ("[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury.... Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully...."); *Walder v. United States,* 347 *U.S.* 62, 65, 74 *S.Ct.* 354, 356, 98 *L.Ed.* 503 (1954) ("there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility."). *And see State v. Miller,* 67 *N.J.* 229, 234, 337 *A.*2d 36 (1975) ("[t]he shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.") (*quoting Har-*

---

[1] *N.J.R.E.* 410 provides:

> Except as otherwise provided in this rule, evidence of a plea of guilty which was later withdrawn, of any statement made in the course of that plea proceeding, and of any statement made during plea negotiations when either no guilty plea resulted or a guilty plea was later withdrawn, is not admissible in any civil or criminal proceeding against the person who made the plea or statement or who was the subject of the plea negotiations. However, such a statement is admissible (1) in any proceeding in which another statement made in the course of the same plea or plea discussions has been introduced and the statement should in fairness be considered contemporaneously with it, or (2) in a criminal proceeding for perjury, false statement, or other similar offense, if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

*ris v. New York*, 401 *U.S.* 222, 226, 91 *S.Ct.* 643, 646, 28 *L.Ed.*2d 1, 5 (1971)).

We have recently recognized that there are circumstances pursuant to which the threat of a perjury prosecution may be such as to unconstitutionally impinge upon a defendant's rights. *State v. Vassos*, 237 *N.J.Super.* 585, 590–91, 568 *A.*2d 583 (App.Div.1990) (trial judge's interruption of key defense witness' testimony to warn him that his testimony could subject him to prosecution for perjury arising from inconsistent statements the witness had made in connection with his guilty plea for the same offense, and then striking his testimony when he refused to testify further, violated defendant's due process rights to a fair trial). *And see Webb v. Texas*, 409 *U.S.* 95, 93 *S.Ct.* 351, 34 *L.Ed.*2d 330 (1972) (trial judge's warnings to defendant's only witness of potential perjury prosecution "effectively drove [him] off the stand" and deprived defendant of his constitutional right to present his defense).

Defendant contends that a similar unconstitutional chill is effectuated by the prior plea bargains pursuant to which he admitted under oath his guilt but which were ultimately rejected by the trial judge causing him to proceed to trial. Because he was not assured that no perjury prosecution would be forthcoming should he testify differently at trial, he claims he was coerced into not testifying. That coercion or chill upon a free exercise of the right to testify, if indeed that was the cause of his decision,[2] however, was not induced by the trial judge or the prosecutor. Nothing that occurred during trial imposed an unconstitutional chill upon defendant's right to testify.

In effect, defendant's contention here is that despite *N.J.R.E.* 410(2), statements made in connection with a plea should not be

---

[2] We say "if" because defendant has a prior record which would have been used by the State to impeach his credibility as a result of his unsuccessful *Sands* (*State v. Sands*, 76 *N.J.* 127, 386 *A.*2d 378 (1978)) application. We would be naive not to recognize that frequently a defendant chooses not to testify to avoid such impeachment.

considered as a basis for a potential perjury trial in the event the plea is withdrawn or not accepted and contrary trial testimony is given, just as it cannot be used during the trial itself. We know of no constitutional basis for this contention. *See State v. Bennett,* 179 *W.Va.* 464, 370 *S.E.*2d 120 (1988) (trial judge's warning to defendant that his trial testimony, if contrary to statements made under oath in connection with a prior withdrawn plea, could form a basis for a perjury trial resulting in defendant's decision not to testify, did not constitute a denial of his Fifth Amendment or due process rights).

Unquestionably, considerations of fairness are implicated in the determination to preclude use of a guilty plea and statements made in connection therewith during a subsequent trial where the plea has been withdrawn or rejected. As the Supreme Court observed years ago "[t]he privilege of withdrawal is indeed a hollow one if evidence of the guilty plea can be used against the defendant in a subsequent trial. In our view, basic considerations of fairness require that when a defendant is permitted to withdraw his guilty plea, he must be returned to the same status that he occupied before the plea was entered. Anything less than this seriously undermines the policies behind allowing a withdrawal." *State v. Boone,* 66 *N.J.* 38, 45–46, 327 *A.*2d 661 (1974). The court's focus, however, was upon use of the plea during a trial on the particular offense to which the defendant had pled guilty. Thus, the court noted "[t]he problem with revealing a prior guilty plea to the jury is that it is too prejudicial, and it 'may induce the jury to become reckless in its consideration of the other evidence.' ... The privilege to withdraw such a plea is surely an empty one and becomes a trap if it may be used in evidence." *Id.* at 47, 327 *A.*2d 661.

Defendant has presented us no authority that such concerns are implicated in the risk he faced here of a potential perjury prosecution in the event his trial testimony was inconsistent with his plea statements. *And see State v. DeCola,* 33 *N.J.* 335, 354, 164 *A.*2d 729 (1960). There a witness had testified in a prior grand jury

proceeding but refused to testify during a subsequent trial on the basis of her Fifth Amendment right not to incriminate herself because of a potential perjury trial arising from her grand jury testimony. The Supreme Court concluded that the witness should be compelled to testify at trial. In doing so, the Court said:

> That a witness under such compulsion must testify truthfully upon the pain of punishment we do not doubt. If the State should charge perjury in that testimony, his earlier statements would be admissible in support of the charge. The question is whether it is unfair to expose the witness to the attendant risk. We think it is not.
>
> The postulate of course is that the witness claims that if compelled to testify he will respect his oath but fears his prior falsehood may ultimately be accepted as the truth. We start with the obvious proposition that a witness may not refuse to answer because although he will tell the truth a jury may later conclude he did not. The hypothetical witness would fare no better if he added to his plea the additional circumstance that other witnesses differ with his version of the events. The answer would remain the same if the witness had theretofore made false extra-judicial statements orally or in writing. We think it equally clear that unfairness does not appear merely because the earlier false statement was under oath in a prior proceeding. The right of litigants to a just result cannot yield to the predicament a witness foolishly creates for himself....

> [66 *N.J.* at 354, 164 *A.*2d 729].

Although the focus there was upon the constitutional rights of a *witness,* and not a *defendant's* distinct constitutional right not to testify, the potential risk of a perjury proceeding arising from untruthful prior statements is no more of a constitutional impediment where a defendant must choose to exercise that right than it is where a witness is compelled to provide trial testimony. *Cf. State v. Irving,* 114 *N.J.* 427, 438, 555 *A.*2d 575 (1989) ("[t]rue, defendant may have to explain any contradictions in the original notice [of alibi], but the jury is entitled to determine where the truth lies. If legitimate doubt is cast, that is the risk that a defendant assumes by asserting an alibi defense.").

*N.J.R.E.* 410 was patterned after *Fed.R.Evid.* 410. We, therefore, consider helpful the congressional history of the federal rule. The original House version of *Fed.R.Evid.* 410 prohibited the use of statements in support of withdrawn guilty pleas for any purpose. The Senate Committee on the Judiciary considered that

result unacceptable and amended the rule. The Committee explained its position as follows,

> ... [V]oluntary statements of an accused made in court on the record, in connection with a plea, and determined by a court to be reliable should be admissible even though the plea is subsequently withdrawn. This is particularly true in those cases where, if the House rule were in effect, a defendant would be able to contradict his previous statement and thereby lie with impunity. [See *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) ]. To prevent such an injustice, the rule has been modified to permit the use of such statements ... in subsequent perjury or false statement prosecutions.
>
> [S.Rep. No. 1277, U.S.C.C.A.N.1974, pp. 7051, 7057–58.]

Similarly, the House Committee on the Judiciary amended Rule 11 of the Federal Rules of Criminal Procedure to permit the use of statements made in support of a later withdrawn guilty plea in a subsequent perjury prosecution. The Committee explained its position as follows,

> The Committee's exception permits the use of such evidence in a perjury or false statement prosecution where the plea, offer, or related statement was made by the defendant on the record, under oath and in the presence of counsel. The Committee recognizes that even this limited exception may discourage defendants from being completely candid and open during plea negotiations and may even result in discouraging the reaching of plea agreements. However, the Committee believes that, on balance, *it is more important to protect the integrity of the judicial process from willful deceit and untruthfulness.*
>
> [H.Rep. No. 247 (emphasis added) ].

*See United States v. Gleason,* 766 *F.*2d 1239, 1245–46 (8th Cir. 1985), *cert. denied,* 474 *U.S.* 1058, 106 *S.Ct.* 801, 88 *L.Ed.*2d 777 (1986) ("Rule 11(e)(6)(D)(ii) of the Federal Rules of Criminal Procedure specifically contemplates the use of a statement made by a defendant in a proceeding involving a guilty plea, which is later withdrawn, in a subsequent criminal proceeding for perjury. The prosecutor's 'threat' of perjury, therefore, was nothing more than a statement of intent to do that which he had an express right to do.").

Simply put, defendant's personal concerns and the advice he may have received from his attorney in connection with his trial testimony, along with the potential impact of *N.J.R.E.* 410(2), are hardly comparable to the conduct found in *Webb v. Texas* and *State v. Vassos* to impermissibly impinge upon a defendant's

constitutional rights. Neither are the prosecutor's refusal to agree that no perjury charges might be forthcoming or the trial judge's disinclination to so direct. We can discern no other rationale for concluding that defendant's trial determination to waive his right to testify was the product of any illegal, improper or unfair influences. Rather, it was the product of a risk that all defendants who have previously pled guilty but proceed to trial face.

 We briefly touch upon the additional contention in Point I that where a defendant is not advised of the potential implications of a perjury prosecution, as is required under Federal Criminal Procedure Rule 11(c)(5), his plea statements cannot therefore be used and that since defendant here was not so advised, he should have been permitted to testify during his trial without impunity. Neither *N.J.R.E.* 410 nor *R.* 3:9-2 requires similar advice. In any event, failure to do so would not implicate the trial proceedings. Rather, any potential consequence would either arise in the context of a plea withdrawal application, a post-conviction application arising therefrom, or at a subsequent perjury proceeding. Neither event is involved here. We thus do not address the issue any further.

## II.

 We have carefully considered Point II, the critical portions of the transcript and the applicable law. We are convinced that while the defendant's contact with the jury should not have occurred, it was defendant who engaged in the alleged "outside influences" and should not be able to benefit thereby. More importantly, we are convinced the trial judge effectively remedied any potential harm. He immediately *voir dired* all of the jurors when the problems arose.[3] One juror stated that defendant's

---

[3] The alleged "outside influence" was brought to light in a note the jury sent to the trial judge while deliberating. It read:

behavior would "have some effect" on her. She was thus excused and an alternate was impaneled. After the *voir dire*, the jurors were instructed not to "talk about anything that's happened outside of this courtroom. Just ignore it. It shouldn't enter into your discussions or your deliberations." The necessary instructions concerning recommencing deliberations with an alternate juror were given and the panel again instructed that any conduct they may have witnessed by the defendant was not to be considered during deliberations. These actions by the trial judge effectively dispelled any potential for improper tainting of the jury deliberation process. *E.g. State v. Vaszorich,* 13 *N.J.* 99, 114–15, *cert. denied,* 346 *U.S.* 900, 74 *S.Ct.* 219, 98 *L.Ed.* 400 (1953) (when the trial court has "full and ample opportunity" to avoid improper influence, prompt and firm action of the judge negates need for mistrial); *compare State v. Grant,* 254 *N.J.Super.* 571, 580, 604 *A.*2d 147 (App.Div.1992) (new trial granted where juror indicated during trial she may be affected by outside influences and was not excused, then, following the trial, wrote to the judge describing comments by a juror whose husband was a corrections officer).

Affirmed.

---

The jury is having a problem with the defendant, due to his constant presence and conduct outside the courtroom, for example: (a) Sitting outside when people are having a cigarette; (b) Very loud conversations on the telephone and in the cafeteria, which maybe interfere with the jury. Additionally, a court officer also advised the trial judge that the jury had overheard defendant's telephone conversations during which he yelled that he did not "have any place to go" and did not "have any money."