813 A.2d 571 (2003)
356 N.J. Super. 485
STATE of New Jersey, Plaintiff-Appellant,
v.
Allan BRAY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted November 20, 2002.
Decided January 10, 2003.
*572 John G. Laky, Warren County Prosecutor, attorney for appellant (LeeAnn Cunningham, Assistant Prosecutor, of counsel and on the brief).
Yvonne Smith Segars, Public Defender, attorney for respondent (Lon Taylor, Assistant Deputy Pubic Defender, of counsel and on the brief).
Respondent filed a pro se supplemental brief.
Before Judges KESTIN, FALL and WEISSBARD.
The opinion of the court was delivered by FALL, J.A.D.
On leave granted, the State appeals from an order entered on June 10, 2002, granting the petition of defendant, Allan Bray, for post-conviction relief, vacating his conviction on child sexual abuse charges and ordering a new trial. We reverse the June 10, 2002 order, and remand the matter to the Law Division for an evidential hearing to determine whether defendant has established the second prong of the ineffective-assistance-of-counsel test outlined in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), adopted in New Jersey by State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987).
To fully understand the somewhat unusual context within which this appeal is presented, the following procedural history is relevant. Defendant was charged in Warren County Indictment Number XX-XX-XXXX with second-degree sexual assault upon K.P., a child less than age thirteen, by committing acts of sexual contact with K.P. on diverse dates between December 26, 1990 and December 31, 1992, contrary to N.J.S.A. 2C:14-2b (count one); thirddegree endangering the welfare of K.P. between December 26, 1990 and December 31, 1992, contrary to N.J.S.A. 2C:24-4a (count two); second-degree sexual assault upon K.P., a child less than age thirteen, by committing acts of sexual contact with K.P. on diverse dates between January 1, 1993 and February 28, 1993, contrary to N.J.S.A. 2C:14-2b (count three); seconddegree endangering the welfare of K.P. between January 1, 1993 and February 28, 1993, contrary to N.J.S.A. 2C:24-4a (count four); second-degree sexual assault by committing acts of sexual contact with K.P. on July 17, 1993, contrary to N.J.S.A 2C:14-2b (count five); second-degree endangering the welfare of K.P. on July 17, 1993, contrary to N.J.S.A. 2C:24-4a (count six); fourth-degree possession of photographs depicting a child under age 16 engaging in a prohibited sexual act, contrary to N.J.S.A. 2C:24-4b(5)(b) (count seven); and second-degree prohibited possession of weapons by certain persons, contrary to N.J.S.A. 2C:39-7b (count eight). *573 K.P. was born on September 21, 1980, and was between ages ten and twelve when the alleged acts of sexual abuse were perpetrated against her by defendant. Defendant's first trial on these charges in 1996 resulted in a mistrial when the jury was unable to reach a unanimous verdict on any count. Prior to commencement of the first trial, defense counsel had placed the name of Britton "Skip" Detrick on defendant's witness list, based upon the following information revealed by the discovery. During a recorded statement given by K.P. to Detective Stephen B. Speirs of the Warren County Prosecutor's Office on August 26, 1994, concerning K.P.'s allegations against defendant, Speirs asked K.P., then nearly age fourteen, "has anyone else touched you or done anything like that to you?" K.P. responded that when she was age three or four Detrick, whom she described as a family friend, had pulled out his penis on two or more occasions and made her play with it while they were riding in Detrick's truck.
On defendant's behalf, an investigator interviewed Detrick and obtained a written statement from him dated October 6, 1994. In his statement, Detrick related the following incident, in pertinent part, purportedly occurring when K.P. was age four: I was in the living room with several other people when [K.P.] jumped on to my shoulders and sat on the base of my neck. I was sitting on the sofa and [K.P.] climbed up behind me and mounted me like a horse. I thought it was innocent horseplay until she began to hump the back of my neck. When she did so I grabbed her off of me and scolded her. I think that I embarrassed her and she became angry. [K.P.] then told [K.P.'s babysitter] that I told her to take her pants off. That was a complete and total lie. The incident occurred in the presence of other people and therefore I had no problem explaining the truth to those present.... I saw [K.P.'s mother] and [defendant] about a week later and [K.P.'s mother] confronted me regarding the incident. I explained to [K.P.'s mother] in front of [K.P.] exactly what happened and she was satisfied that [K.P.] had made up the story and that there was no truth to it.... There were never any formal charges against me or any complaint filed. [K.P.'s mother] scolded [K.P.] for making the false allegations....
Defense counsel had issued a subpoena to Detrick, intending to call Detrick to testify at defendant's first trial concerning this incident. Defense counsel had sought to use this prior, allegedly false, allegation of sexual misconduct to bring into question K.P.'s credibility concerning her allegations against defendant.
K.P.'s testimony during defendant's first trial was briefly interrupted to allow the trial judge to consider the State's application to preclude any testimony or evidence concerning the Detrick incident. Defense counsel requested a hearing outside the presence of the jury consisting of the proffered testimony by Detrick, as well as testimony from K.P., to determine whether K.P.'s prior allegations of sexual abuse against Detrick had been fabricated and, if so, to use them during his crossexamination of K.P. In granting the State's application to preclude the use of any evidence based upon Detrick's statement, the trial judge ruled it was not permissible "to attack the credibility of a prosecution witness by introducing [that] witnesses's past actions which would indicate that that witness had previously falsely accused certain people of committing crimes."
After the jury was unable to reach a verdict during the first trial, the charges against defendant in counts one through seven of the indictment were re-tried to a *574 jury between July 29, 1997 and August 5, 1997. At the commencement of defendant's second trial, defense counsel again raised the issue concerning Detrick's testimony. The trial judge preserved that issue for appeal, and stated that the evidential rulings he had made concerning Detrick's proffered testimony at the first trial "are still going to stand in this trial." Defendant was convicted of the sexual assault charges contained in counts one and five; the endangering charges contained in counts two and six; and the possession of prohibited photograph charge in count seven. The charges in counts three and four were dismissed, and defendant pled guilty to the weapon charge in count eight.
Defendant was sentenced on the convictions on counts one, five and six to three concurrent eight-year terms of imprisonment, to be served at the Adult Diagnostic and Treatment Center (ADTC). The court also imposed concurrent five-year terms on the convictions on the charges contained in counts two and eight, and a concurrent one-year term for the fourthdegree conviction on count seven, also to be served at the ADTC. Applicable mandatory fines and penalties were assessed, and defendant was ordered to comply with the registration requirements contained in Megan's Law.
On his direct appeal, in an unpublished opinion, we affirmed defendant's convictions and the sentence imposed. State v. Bray, A-3271-97T4 (Jan 4, 2000). The Supreme Court denied defendant's petition for certification. State v. Bray, 164 N.J. 559, 753 A.2d 1152 (2000). On his direct appeal, defendant had presented twelve separate arguments for consideration. However, appellate counsel did not raise, as error, the ruling of the trial judge precluding the Detrick evidence.
On October 6, 2000, defendant filed a pro se petition for post-conviction relief contending: (1) his indictment was the product of prosecutorial misconduct; (2) defendant was deprived of the effective assistance of trial counsel; (3) defendant was deprived of the effective assistance of appellate counsel by the failure to raise, as error on appeal, the trial court's decision to prohibit testimony of prior false accusations of sexual assault that had been made by the victim; (4) the State committed acts constituting prosecutorial misconduct; and (5) defendant was denied due process by the failure of the court to provide an adequate, fair and impartial environment during his trial.
Defendant's PCR application was argued in the Law Division on May 21, 2002. The PCR judge ruled defendant had been provided ineffective assistance of appellate counsel based upon counsel's failure to raise, as error on defendant's direct appeal, the failure of the trial judge to conduct a hearing to determine the admissibility of the proffered prior false allegation of sexual misconduct made by K.P. against Detrick. The PCR judge concluded that the trial judge had erred by not conducting such a hearing, and that appellate counsel's failure to raise that issue on appeal "clearly prejudiced the defendant." After vacating the convictions and granting defendant a new trial, the PCR judge stated, in pertinent part:
This court is satisfied that at the retrial of this defendant, a [N.J.R.E. 104] hearing consistent with the principles expressed in [State v. Budis, 125 N.J. 519, 593 A.2d 784 (1991), State v. Ross, 249 N.J.Super. 246, 592 A.2d 291 (App. Div.1991) and Carrigan v. Arvonio, 871 F.Supp. 222 (D.N.J.1994)] should precede opening statements. The defendant at that hearing should first be accorded a full opportunity to explore the issue of the truth or falsity of the victim's *575 allegations of prior abuse. If there were a judicial determination that these allegations were probably false, the incident is not protected by the Rape Shield Law. Rather, proof of probably false allegations themselves would be admissible to impeach the defendant's credibility according to the instructions in Ross. If, on the other hand, the allegation were deemed to be probably true, they might be held to be admissible either, as in Budis, to offer an alternative source of sexual knowledge, or depending on the circumstances surrounding the reporting of the incidents, to offer a motive of the child to have made a false accusation....
Because of the disposition of this motion the other arguments contained in both defense counsel and defendant's brief are moot.
An order memorializing the judge's decision was entered by the court on June 10, 2002. The State's motion for a stay of the trial pending appeal was denied by the trial court by an order entered on July 23, 2002, and the judge set bail for defendant at $25,000. On July 25, 2002, we entered an order granting the State's motion for leave to appeal from the trial court's decision. On July 25, 2002, we also entered a separate order, on the State's emergent application, staying the grant of post-conviction relief, the new trial ordered, and the grant of bail, pending disposition of this appeal.
On appeal, the State presents the following arguments for our consideration: POINT I
THE STATE'S APPEAL SHOULD BE GRANTED BECAUSE THE POSCONVICTION RELIEF COURT IPROVIDENTLY VACATED A FIVYEAR OLD SEXUAL ASSAULT CONVICTION AND ORDERED A NEW TRIAL.
POINT II
THE PCR COURT IMPROVIDENTLY GRANTED POST-CONVICTION RLIEF, BECAUSE DEFENDANT FAILED TO MEET EITHER THE "DEFICIENT PERFORMANCE" OR "PREJUDICE" PRONGS TO ESTALISH INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.
A. SPECIFIC INSTANCES OF CONDUCT (FALSE ALLEGTIONS) NOT RESULTING IN A CRIMINAL CONVICTION ARE INADMISSIBLE TO IMPEACH THE CREDIBILITY OF A WINESS.
B. APPELLATE COUNSEL EERCISED REASONABLE JUDMENT IN CONCLUDING THAT NEW JERSEY LAW DOES NOT PERMIT THE ADMISSION OF PROR INSTANCES OF CONDUCT TO IMPEACH CREDIBILITY.
C. ASSUMING ARGUENDO THAT COUNSEL ERRED AND FAILED TO EXERCISE RESONABLE PROFESSIONAL JUDGMENT, THE DEFENDANT FAILED TO PROVE THAT BUT FOR COUNSEL'S UNPROFESIONAL ERRORS, THE RSULTS OF THE TRIAL WOULD HAVE BEEN DIFFERENT.
In granting defendant's application for post-conviction relief, the PCR judge focused on the issue of whether evidence of prior false allegations of sexual misconduct made by a victim could be admitted during the trial of a defendant on criminal sexual abuse charges. The judge found that New Jersey law permitted the use of such prior false allegations; that the trial judge had erred in failing to conduct a hearing concerning the admissibility of the Detrick *576 evidence; that appellate counsel was ineffective for failing to raise that issue on defendant's direct appeal; and that failure of appellate counsel prejudiced defendant, compelling vacation of the judgment of conviction and the ordering of a new trial. Although we agree with much of the detailed analysis provided by the judge in his oral decision, his conclusion was based upon a premise that had not been established; specifically, that the prior allegations of sexual misconduct made by K.P. against Detrick were probably false.
We first examine the underlying issue of whether prior false allegations of sexual misconduct by an alleged victim against another can be used as evidence during the criminal trial of a defendant on sexual abuse charges, the procedures and criteria necessary to evaluate such evidence, and its use at trial. We will then discuss the procedures applicable when such an issue is raised in the context of an application for post-conviction relief on ineffective-assistance-of-counsel grounds, where the preclusion of the use of such evidence was not raised as an issue on direct appeal.
In State v. Ross, 249 N.J.Super. 246, 592 A.2d 291 (App.Div.1991), the defendant was charged with sexually abusing a tenyear old child based upon the uncorroborated testimony of the child. Id. at 247, 592 A.2d 291. In his opening statement, the prosecutor had suggested to the jury that the child, "by reason of her tender age, could not have had the knowledge to assert that defendant had abused her as she alleged he did unless the incidents had actually occurred." Id. at 248, 592 A.2d 291. During his opening statement, defense counsel attempted to tell "the jury that in fact the victim did have such knowledge because she claimed to have been sexually abused twice before[;]" the prosecutor objected. Ibid.
During argument outside the presence of the jury, defense counsel informed the court he had a report from the Division of Youth and Family Services (DYFS) stating "that the victim claimed to have been sexually abused by one adult male relative when she was six years old and by another adult male relative when she was eight years old." Id. at 248-49, 592 A.2d 291. The trial judge then conducted a Rule 8[1] hearing to determine whether that evidence would be admissible. Id. at 249, 592 A.2d 291. At the hearing, the victim testified that the prior incidents had occurred. Ibid. However, the trial judge ruled that the Rape Shield Law, N.J.S.A. 2C:14-7, precluded any reference to the prior incidents. Ibid.
We first concluded "that the prosecutor's references to the child's naivete and lack of motive constituted plain error capable of producing an unjust result." Id. at 250, 592 A.2d 291. In addressing the Rape Shield Law issue, we held that when a defendant seeks to explore the prior sexual conduct of a victim for any purpose, the defendant must first apply to the court for a ruling. Id. at 150-51, 592 A.2d 291. In discussing the nature of that hearing, we stated, in pertinent part:
Defendant at that hearing should first be accorded a full opportunity to explore the issue of the truth or falsity of the victim's allegations of prior abuse. If there were a judicial determination that these allegations were probably false, the incidents could no longer be characterized as sexual conduct, proof of which is barred by the Rape Shield Law. Rather, proof of the probably false allegations themselves would be admissible to impeach the victim's credibility. See, e.g., State v. Barber, 13 Kan.App.2d 224, *577 766 P.2d 1288 (1989). If on the other hand, the allegations were deemed to be probably true, they might be held to be admissible either, as in [State v. Budis, 243 N.J.Super. 498, 580 A.2d 283 (App. Div.1990), aff'd, 125 N.J. 519, 593 A.2d 784 (1991)], to offer an alternative source of sexual knowledge, or, depending on the circumstances surrounding the reporting of these incidents by the victim to her mother, to offer a motive for the child to have made a false accusation. See Commonwealth v. Joyce, 382 Mass. 222, 228, 415 N.E.2d 181, 186 (1981). The extent to which, if at all, any of these proofs are admissible, for what purpose and under what, if any, limitations, are matters to be determined by the trial judge following the [N.J.R.E. 104] hearing.

[Id. at 252, 592 A.2d 291.]
The State argues our conclusions in Ross that prior false allegations of sexual abuse cannot be characterized as "sexual conduct," proof of which is barred by the Rape Shield Law, and that "proof of the probably false allegations themselves would be admissible to impeach the victim's credibility[,]" ibid., were dicta and have no precedential value. We disagree. In Ross, we ordered a new trial, and ruled that a pre-trial hearing was to be conducted at which defendant would "be accorded a full opportunity to explore the issue of the truth or falsity of the victim's allegations of prior abuse." Ibid. Accordingly, in order to provide proper guidance to the trial court, it was necessary to specifically address the procedural consequences of any findings that would flow from rulings made at that hearing.
Moreover, we are persuaded by the overwhelming weight of authority in other jurisdictions that prior false allegations of sexual abuse made by the victim cannot be classified as "previous sexual conduct" under our Rape Shield Law, and now so rule. See, e.g., Booker v. State, 334 Ark. 434, 976 S.W.2d 918, 919 (1998) (prior false allegations by victim of sexual conduct is not evidence of "prior sexual conduct" that is excluded by the rape shield statute but instead is evidence of prior misconduct of the alleged victim that has a direct bearing upon the alleged victim's credibility); Smith v. State, 259 Ga. 135, 377 S.E.2d 158, 160 (1989) (evidence of previous false allegations of sexual abuse by the victim does not fall within the proscription of the rape-shield laws); State v. West, 95 Hawai`i 452, 24 P.3d 648, 654 (2001) (false allegations of unrelated sexual assaults are not excluded by the rape shield statute); State v. Walton, 715 N.E.2d 824, 826 (Ind.1999) (evidence of prior false accusations of rape made by a complaining witness does not constitute "prior sexual conduct" for rape shield purposes); State v. Smith, 743 So.2d 199, 202-03 (La.1999) (prior false allegations concerning sexual behavior do not constitute "past sexual behavior" under the rape shield laws and are admissible for impeachment purposes); Miller v. State, 105 Nev. 497, 779 P.2d 87, 89 (1989) (prior false allegations of sexual abuse or sexual assault by complaining witnesses do not constitute "previous sexual conduct" for rape shield purposes); State v. Thompson, 139 N.C.App. 299, 533 S.E.2d 834, 841 (2000) (the rape shield statute is only concerned with the sexual activity of the complainant, and its rule of exclusion is inapplicable to false accusations); State v. Martin, 984 P.2d 975, 979 (Ut.1999) (rape shield statute does not exclude evidence of alleged rape victim's previous false allegations of rape); and State v. Quinn, 200 W.Va. 432, 490 S.E.2d 34, 40 (1997) (when trial court finds a strong probability that the victim has made prior false accusations of sexual misconduct, evidence relating to those statements may be considered outside the scope *578 of the rape shield law), cert. denied, Quinn v. West Virginia, 522 U.S. 1004, 118 S.Ct. 577, 139 L.Ed.2d 416 (1997). Where the trial court is satisfied that the victim has made allegations of sexual misconduct by others in the past that are probably false, the evidential preclusions of the Rape Shield Law are inapplicable, since "false allegations" cannot constitute "previous sexual conduct" as defined in N.J.S.A. 2C:14-7f. We also conclude that the "preponderance of evidence" standard of proof governs a defendant's attempt to establish the probable falsity of the victim's prior allegation. See People v. Wallen, 996 P.2d 182, 185 (Colo.App. 1999); State v. District Court, 277 Mont. 349, 922 P.2d 474, 479 (1996); Miller v. State, 105 Nev. 497, 779 P.2d 87, 90 (1989).
Whether a defendant contends the prior allegations of sexual misconduct made by the victim were true or false, the trial court must conduct an evidential hearing pursuant to N.J.R.E. 104 outside the presence of the jury to determine, inter alia, whether the allegations were made, when they were made, the substance of the allegations, and the attending circumstances. Either of two results from such a hearing is possible. The court could conclude that the prior allegations of sexual misconduct were "probably true," in which instance the criteria for admission or use of such evidence are dictated through application of the principles set forth in our Rape Shield Law, N.J.S.A. 2A:14-7, and the case law interpreting same. See Budis, supra, 125 N.J. at 532-40, 593 A.2d 784 (outlining the procedures and criteria for determining and weighing the probative value of evidence of prior sexual abuse of a child against its prejudicial effect through application of the Rape Shield Law).
On the other hand, the trial court could conclude that the prior allegations were "probably false," in which case the provisions of the Rape Shield Law are inapplicable because those prior allegations, being false, do not constitute "previous sexual conduct." However, a finding of the probable falsity of the allegations is not determinative of admissibility or use of that evidence on cross-examination of the victim. The proffered evidence is still subject to all other applicable evidentiary requirements and considerations, including an analysis of the relevancy, probative value, and prejudicial effect of such evidence. See N.J.R.E. 401, 403, 606, and 608.
We agree with the PCR judge that an evidentiary hearing should have been conducted by the trial judge to determine whether use of the Detrick evidence would have been permissible and, if so, for what purpose and to what extent. Here, at a minimum, that hearing should have consisted of testimony from Detrick, K.P., and K.P.'s mother. The trial judge having failed to conduct such a hearing, it was incumbent upon the PCR court to do so.[2] It is only after conducting such a hearing that the PCR judge will be in a position to properly evaluate whether the prior allegations of sexual misconduct made by K.P. against Detrick were probably false or probably true and, in either event, whether application of applicable law and criteria would have resulted in the use of that prior allegation at defendant's trial.
Among the factors to be explored and considered at that hearing are defendant's right of confrontation, Budis, supra, 125 N.J. at 530-31, 593 A.2d 784; whether *579 the evidence was relevant to the defense, id. at 532, 593 A.2d 784; whether its probative value outweighs its prejudicial effect, ibid.; whether or not the prior allegations closely resemble the acts alleged in the indictment, id. at 533, 593 A.2d 784; the difference in the age and maturity of the child at the time of the prior allegations as compared with the age and maturity of the child at the time of the incidents complained in the indictment, ibid.; and whether such evidence would create confusion of the issues or unwarranted invasion of the privacy of the victim, id. at 538, 593 A.2d 784.
Turning to the context in which the underlying issue is presented, the Sixth Amendment of the United States Constitution guarantees every criminal defendant the assistance of legal counsel in his or her defense. Strickland, supra, 466 U.S. at 685, 104 S.Ct. at 2063, 80 L.Ed.2d at 692. Moreover, the right to counsel is expansively viewed as the right to the effective assistance of counsel. Ibid.
In order to establish a claim for ineffective assistance of counsel, a defendant must satisfy the two-prong test set out by the Strickland Court:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
[Id. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.]
As we have noted, the standards embodied in the Strickland test have been adopted by New Jersey courts. Fritz, supra, 105 N.J. at 58, 519 A.2d 336.
"`Judicial scrutiny of counsel's performance must be highly deferential,' and must avoid viewing the performance under the `distorting effects of hindsight.'" State v. Norman, 151 N.J. 5, 37, 697 A.2d 511 (1997) (quoting, Strickland, supra, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694). Moreover, there is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, supra, 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.
Adequate assistance of counsel should be measured by a standard of "reasonable competence." Fritz, supra, 105 N.J. at 60-61, 519 A.2d 336. That standard does not require "the best of attorneys," but rather requires that attorneys be "not ... so ineffective as to make the idea of a fair trial meaningless." State v. Davis, 116 N.J. 341, 351, 561 A.2d 1082 (1989). "These standards apply to claims of ineffective assistance at both the trial level and on appeal." State v. Guzman, 313 N.J.Super. 363, 374, 712 A.2d 1233 (App. Div.), certif. denied, 156 N.J. 424, 719 A.2d 1022 (1998).
Based upon our review of the record in the light of these standards, we concur with the PCR judge's conclusion that appellate counsel's performance was deficient due to his failure to raise on appeal, as error, the trial court's preclusion of the *580 Detrick evidence without conducting an evidential hearing.
However, we are unable to determine on this record whether defendant has satisfied the second prong of the ineffectiveassistance-of-counsel criteria, namely, that appellate counsel's deficient performance prejudiced the defense. Where "actual ineffectiveness" has been demonstrated, "prejudice must be proved; it is not presumed." Fritz, supra, 105 N.J. at 52, 519 A.2d 336 (citing to Strickland, supra, 466 U.S. at 692-93, 104 S.Ct. at 2067, 80 L.Ed.2d at 696-97). As the Court further noted:
Specifically, a defendant alleging actual ineffectiveness must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."
[Ibid. (quoting Strickland, supra, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.)]
As we have noted, without a hearing, it cannot be determined whether the prior allegations of sexual misconduct against Detrick were probably true, or probably false, a determination that dictates the evidential criteria to be applied when considering admission of the Detrick evidence.
Moreover, if, under the proper application of the law, the PCR judge were to determine that the Detrick evidence was properly excluded, albeit for reasons different than those articulated by the trial judge, then defendant would clearly be unable to satisfy the second prong of the ineffective-assistance-of-counsel test because the deficient performance of appellate counsel would not have prejudiced the defense. Conversely, if the PCR judge determines that the Detrick evidence should have been admitted then, depending upon the scope and purpose of that admission, and considering the totality of the evidence before the jury, the PCR court would be in a position to evaluate and determine whether the deficient performance by appellate counsel did, in fact, prejudice the defense because there is a reasonable probability that the result would have been different. Strickland, supra, 466 U.S. at 694-95, 104 S.Ct. at 2068-69, 80 L.Ed.2d at 698. Although the PCR court cannot determine whether, had the issue been raised by appellate counsel, "this court would have overturned [defendant's] conviction on the original appeal[,]" State v. Moore, 273 N.J.Super. 118, 129, 641 A.2d 268 (App.Div.), certif. denied, 137 N.J. 311, 645 A.2d 139 (1994), the PCR court can determine, after conducting the hearing, whether the improperly-excluded evidence warrants a new trial in the interest of justice. See R. 3:20-1.
We also note that the PCR judge did not reach the other issues raised by defendant in his petition. Depending upon the result of the N.J.R.E. 104 hearing, the trial court may be required to consider those arguments.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Now, N.J.R.E. 104.
[2] We recognize that the trial judge has since retired; however, the transcripts of both trials are available to provide the PCR judge with the proper context within which to evaluate the testimony adduced at the hearing.