869 A.2d 445 (2005)
376 N.J. Super. 114
STATE of New Jersey, Plaintiff-Respondent,
v.
Kendall MURPHY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 7, 2005.
Decided March 22, 2005.
*446 Yvonne Smith Segars, Public Defender, attorney for appellant (Timothy P. Reilly, Designated Counsel, of counsel and on the brief).
James F. Avigliano, Passaic County Prosecutor, attorney for respondent (Terry Bogorad, Senior Assistant Prosecutor, of counsel and on the brief).
Before Judges A.A. RODRIGUEZ, CUFF and WEISSBARD.
The opinion of the court was delivered by
CUFF, J.A.D.
Following a jury trial, defendant was convicted of third degree theft from the person, contrary to N.J.S.A. 2C:15-1a(1), and acquitted of second degree robbery. He was sentenced to a four-year term of imprisonment. In addition to restitution in the amount of $664.34, the appropriate assessments and penalties were also imposed.
On appeal, defendant raises the following arguments:
POINT I
THE DEFENDANT'S CONVICTION MUST BE REVERSED, SINCE THE PLEA AGREEMENT ENTERED INTO WITH CO-DEFENDANT RALPH MONACO, REQUIRING HIM TO INCULPATE DEFENDANT, EFFECTED THE RELIABILITY AND TRUSTWORTHINESS OF MONACO'S TRIAL TESTIMONY AND CREATED A SIGNIFICANT RISK OF PERJURY, THEREBY DENYING DEFENDANT HIS DUE PROCESS RIGHT TO A FAIR TRIAL. (U.S. CONST. AMEND. XIV; N.J. CONST. OF 1947, ART. I, 9, 10).
POINT II
THE DEFENDANT'S CONVICTION MUST BE REVERSED, SINCE ERROR'S [sic] OF THE TRIAL COURT BEFORE THE JURY DENIED DEFENDANT HIS DUE PROCESS RIGHT TO RECEIVE A FAIR TRIAL. (U.S. CONST. AMEND. XIV; N.J. CONST. OF 1947, ART. I, 9, 10).
A. The trial court's instructions were erroneous and misleading with respect to the guilty pleas[  ]co-defendants' guilty [pleas  ]and with respect to the use of the testimony of the co-defendants concerning the pleas.
B. The trial court erred in denying the defense motion for a mistrial following the admission of prior "bad act" testimony.

*447 C. The trial court's [sic] erred in admitting hearsay evidence before the jury over defense objection.
D. The procedure of advising the jury that State's witnesses were in custody and represented by lawyer was prejudicial and denied defendant a fair trial.
POINT III
THE PROSECUTOR'S ACTIONS THROUGHOUT THE TRIAL CONSTITUTED PROSECUTORIAL MISCONDUCT INCLUDING, USING INADMISSIBLE HEARSAY EVIDENCE, COMMENTING ON DEFENDANT'S RECORD AND FAILURE TO TESTIFY, PLACING INADMISSIBLE EVIDENCE THAT DEFENDANT WAS INVOLVED IN A DRUG PURCHASE AFTER THE ROBBERY, FAILED TO PROVIDE DISCOVERY AND REQUIRED CO-DEFENDANT MONACO TO PROVIDE AN INCULPATORY STATEMENT AGAINST DEFENDANT IN ORDER TO OBTAIN A FAVORABLE PLEA AGREEMENT.
POINT IV
THE DEFENDANT'S CONVICTION MUST BE REVERSED, SINCE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL SINCE TRIAL COUNSEL WAS INEFFECTIVE FOR PRECLUDING DEFENDANT FROM TESTIFYING AND FOR FAILING TO OBJECT TO THOSE ERRORS NOTED IN POINT I[II].

POINT V
THE SENTENCE IMPOSED ON DEFENDANT IS EXCESSIVE AND SHOULD "SHOCK THE JUDICIAL CONSCIENCE" SINCE THE COURT FOUND, BUT FAILED TO CONSIDER A MITIGATING FACTOR.
Due to a statement in a curative instruction which had the clear capacity to bolster the credibility of the State's main witness and defendant's former co-defendant, and the omission of an instruction that the jury could not consider the co-defendant's plea agreement as substantive evidence of defendant's guilt, we conclude that defendant was denied a fair trial. Therefore, we reverse the conviction and remand for a new trial.
The facts underlying defendant's conviction are straightforward and uncomplicated. On June 4, 2000, Ralph Monaco and his then girlfriend, Lisa Benjamin (also known as Lisa Foster and Lisa Suess), were driving around Passaic County discussing ways to make money. Both were heroin addicts and needed money to buy drugs. In the course of their drive, they passed a Coastal Gas station in Clifton that seemed to them an easy mark. Although they disputed between themselves who proposed the idea to rob the gas station, both agreed that they decided to present their scheme to defendant Kendall Murphy.
According to Monaco, they proceeded to defendant's home in Paterson, presented the idea, and obtained defendant's agreement to participate. As the trio approached the gas station, Lisa parked the car behind garden apartments close to the gas station, and the two men walked to the station. Defendant functioned as a lookout, and Monaco approached the attendant to ask for change. When the attendant opened the register, Monaco shoved him aside and grabbed the money in the till. Monaco and defendant ran from the station and jumped into Lisa's waiting car. As they entered the car, a woman screamed and called the police.
*448 Lisa drove to defendant's house where the trio split the money evenly among themselves. Monaco shaved, changed his clothing and cut his hair. He also instructed Lisa to report that her car had been stolen. Monaco and Lisa then left to purchase drugs.
Kenneth Pavan and his cousin were working at the gas station on June 4, 2000. Pavan testified that a white man accompanied by a black male approached the soda machine. The white male then approached him and asked for change of a $5 bill. Pavan entered the center island booth. When he opened the register, the white male pushed him and took the money from the open till. The white male and the black male then fled on foot from the station to an alleyway between apartments. Neither Pavan nor his cousin was able to identify either man.
On June 5, Monaco fled to Florida. Lisa was interviewed by the police through the license plate on her car that had been recorded by the woman who had observed Lisa's car. In her initial statement, Lisa denied any involvement but later admitted her participation. She contacted Monaco and told him that she had spoken to the police. Then she traveled to Florida to convince Monaco to return to New Jersey. Before his return, he was contacted by the Clifton police who informed him that Lisa and defendant had given them statements inculpating him.
Defendant was arrested on June 8, 2000. In a typed but unwitnessed and unrecorded statement, defendant admitted that he went for a ride with Monaco and Lisa on June 4. Defendant stated that Monaco proposed the gas station robbery, but he insisted that he refused to get involved and Lisa drove him home. Defendant admitted that Lisa and Monaco returned to his house after the robbery, at which time Monaco shaved, cut his hair and changed his clothes. According to defendant, Monaco paid him $125.
On June 17, 2000, Monaco returned to New Jersey and was immediately arrested. He gave a statement to police that described his participation in the June 4 robbery. On January 2, 2001, he pled guilty to second degree robbery. The prosecutor recommended a six-year term. As a condition of the plea agreement, Monaco was required to provide a factual basis for his plea that inculpated Lisa and defendant. Monaco was sentenced to a five-year term.
Monaco testified at defendant's trial on January 22, 2002. He described the genesis of the plan to take money from the gas station and the enlistment and participation of defendant in the plan. He also identified defendant as the black male who accompanied him to the gas station. During the course of his testimony, Monaco acknowledged that he had pled guilty to the charge of second degree robbery and that he was required to provide a factual basis for his plea that inculpated defendant and Lisa in the June 4 theft. He stated, however, that he was asked to testify against defendant only after he had been sentenced and was serving his prison term.
Monaco was subject to extensive cross-examination concerning the plea agreement he had entered with the State. He acknowledged that the maximum term was ten years, that he may have been eligible for a five-year minimum mandatory term, and that the No Early Release Act (NERA)[1] could have been imposed but was "eliminated." In the course of this exchange, Monaco volunteered that defendant had been offered a similar plea agreement to second degree robbery without a NERA minimum mandatory term. Defendant *449 moved for a mistrial based on the statement volunteered by Monaco that defendant had been offered a similar plea agreement.
The following morning, the trial judge delivered a long instruction regarding plea bargaining to cure any negative impact from Monaco's volunteered statement that defendant had been offered a similar plea agreement. The instruction informed the jury that plea bargaining is "an acceptable way of resolving a criminal case where a person is actually guilty of the offense." (emphasis added.) He discussed the benefits to defendant and to the State. He then added "a judge can only accept a plea agreement on the record when it's made under oath after the person testifies to the satisfaction of that judge that they are, in fact, guilty of the offense." (emphasis added.) The judge informed the jury that the mere fact that a plea offer had been extended to a defendant is not evidence of the defendant's guilt. He also advised the jury that it may consider whether a witness has made a plea agreement with the State as a factor during the jury's evaluation of the witness's credibility.
In his closing instructions to the jury, the trial judge provided an extensive charge on the evaluation of the credibility of witnesses by the jury. He then specifically focused on the plea agreements accepted by Monaco and Lisa. He said:
On the subject of credibility of witnesses, evidence has been introduced to show that the  that one or more of the witnesses has previously admitted guilt to the commission of a crime or has previously been convicted of a crime.
In criminal trials when a person takes the stand to testify as a witness, the fact that he has been previously  he or she has previously been convicted of a crime is permitted to be placed before the jury for the jury's determination in determining the credibility or believability to be given to that testimony.
So here evidence of prior admissions of guilt of serious criminal acts  in this case both Monaco and Miss Suess or Miss Benjamin, whatever her name is, had both admitted to having committed the crime of robbery as well as whatever other information has been elicited with regard to their criminal history  that can be considered by you in determining the credibility to be given to their testimony.
Evidence of prior criminal convictions can be considered by you only in connection with your consideration of the credibility to be given to the testimony of those witnesses.
Defendant argues that the final charge neglected to inform the jury that guilty pleas entered by Monaco and Lisa could not be used as substantive evidence of defendant's guilt. Defendant further contends that the error was magnified by the discourse about plea bargaining when the trial judge informed the jury that the judge must be satisfied at the time of the plea that the person entering the guilty plea is actually guilty of the offense.
Neither plea bargains nor the problems presented by the offender who testifies following entry of a plea bargain are new. The State has legitimate concerns that the credibility of the witness is compromised; the defendant has concerns that the witness will testify in accordance with the witness's personal interests rather than what actually occurred and that the jury will perceive that the evidence of a co-defendant's guilt is substantive evidence of the involvement of the defendant in the offense charged. Traditionally, the guilty plea of a co-defendant is inadmissible at the trial of a co-defendant as substantive evidence of the defendant's guilt. *450 State v. Stefanelli, 78 N.J. 418, 430, 396 A.2d 1105 (1979). On the other hand, a witness's guilty plea is certainly admissible to affect his credibility as a witness. Id. at 433, 396 A.2d 1105. When evidence of the guilty plea of a co-defendant is admitted at trial, the trial judge must provide a cautionary instruction as to the limited use of the testimony for credibility purposes. Id. at 434, 396 A.2d 1105.
To be sure, the Court has not directed that the limiting instruction must also state that the jury may not consider the witness's guilty plea as substantive evidence of defendant's guilt. Where, as here, however, two witnesses have testified about their involvement in the criminal episode and have pled guilty to second degree robbery, the same offense with which defendant is charged and on trial, and the trial judge has instructed the jury that a guilty plea will not be accepted by a judge unless the judge is satisfied that witness was guilty of the charge to which he or she pleaded guilty, the limiting instruction must clearly define not only the limited use of the testimony but also the prohibited use of the testimony.
Such a two-fold instruction is particularly important in this case because the only evidence implicating defendant in the gas station theft was provided by the co-defendants who had accepted plea agreements. The victim could not identify either defendant or Monaco. His co-worker was unable to identify defendant. The woman who saw the thieves get in the car driven by Lisa could not identify defendant. The trial judge had, however, bolstered the credibility of Monaco and Lisa when he advised the jury that a guilty plea could not be accepted unless the judge was satisfied that the person entering the plea was, in fact, guilty.
In Stefanelli, Justice Handler observed "when a guilty plea of a co-defendant is brought to a jury's attention without any guiding instructions as to its use in their deliberations, the potential for misuse is manifest." 78 N.J. at 435, 396 A.2d 1105 (citations omitted). The mischief attendant to an incomplete instruction is no less, particularly when the trial judge has enhanced or bolstered the credibility of the witnesses who have testified about their guilty pleas.
Implicit in our discussion of the testimony of Monaco regarding his guilty plea and the instructions provided to the jury is our rejection of defendant's contention that any reference to these pleas denied him a fair trial. Defendant argues that the condition imposed on Monaco that he implicate defendant created an unwarranted risk of perjury. He supports this argument by analogizing the condition of his plea to plea agreements that prohibit testimony at future proceedings. See State v. Fort, 101 N.J. 123, 130-31, 501 A.2d 140 (1985) (a "no testimony" plea agreement violates a co-defendant's rights to due process and to present witnesses in his favor).
Here, Monaco's plea agreement did not include any condition about providing testimony at defendant's trial. According to Monaco, he was approached for his testimony only after entering his plea and commencing his sentence. At his plea, Monaco agreed to inculpate defendant in the factual basis provided in support of his plea. This type of condition is not the functional equivalent of the prohibited no testimony plea. Requiring a person to provide inculpatory evidence at his plea or at trial does not suppress evidence. While there are concerns about bias and perjury to secure a personal benefit, the witness is subject to cross-examination that exposes his veracity to rigorous evaluation by the jury. State v. Long, 119 N.J. 439, 489, 575 A.2d 435 (1990).
Our concerns about enhancement of Monaco's and perhaps Lisa's credibility *451 by the trial judge's instructions regarding the plea agreements are magnified by certain remarks of the prosecutor in his closing argument that injected the specter of police brutality into this record. The prosecutor stated:
You know, we all watch movies. We're all aware of war films and prisoners of war. When did the prisoner of war get beaten the most? He got beaten the most when he fooled his captors, when he tricked them. If he told the truth, he didn't get beaten, he didn't get anything. It's when he deceived his captor.
To his credit, the trial judge issued an immediate instruction to the jury in which he directed the jury to disregard this statement. Ordinarily, we will consider an immediate curative instruction as a critical factor in evaluating the appropriate remedy for an unwarranted and inappropriate statement by the prosecutor. State v. Daniels, 182 N.J. 80, 100-02, 861 A.2d 808 (2004). Defendant urges that the prosecutor's unfortunate prisoner of war allusion had the clear capacity to enhance Monaco's credibility and that no curative instruction can override the prejudice that flowed to defendant.
We cannot fathom what the prosecutor thought the prisoner of war analogy would accomplish. There was not a hint of evidence that Monaco's statement and testimony was motivated by fear of physical assault or, stated differently, by anything other than unvarnished personal interest. Nevertheless, the prosecutor injected into this record the suggestion of extra-credibility because he avoided a beating. We have already expressed our concern that the trial judge's remarks could have been readily understood by the jury as enhancing the credibility of Monaco's version of the episode. The prisoner of war analogy only underscores our concern that defendant was denied a fair trial due to undue enhancement of Monaco's credibility. Therefore, we reverse and remand for a new trial.
Due to our disposition, we need not address the other issues presented by defendant. We note, however, that use of the police report to refresh the recollection of the woman who reported the license plate number on Lisa's car was improper. So, too, the testimony of Detective Barr regarding the license plate number was inadmissible hearsay. Any error, however, was harmless because Lisa confirmed that the number in the police report was the license plate number of her car. Furthermore, Detective Barr should have refrained from reporting that he arrived on the scene in response to a strong-arm robbery. By necessity this description contains information derived from another source and also implicates one of the primary factual issues to be decided by the jury. State v. Bankston, 63 N.J. 263, 271, 307 A.2d 65 (1973).
Reversed and remanded for a new trial.
NOTES
[1] N.J.S.A. 2C:43-7.2