937 A.2d 354

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT
v. B.M.[1], DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted September 19, 2007—Decided January 11, 2008.

---

[1] The respondent has been identified by initials in order to safeguard the privacy interests of the infant complainant.

Before Judges PARKER, R.B. COLEMAN and LYONS.

*James F. Avigliano,* Passaic County Prosecutor, attorney for appellant (*Christopher W. Hsieh,* Senior Assistant Prosecutor, of counsel and on the brief).

*Gregory Aprile,* attorney for respondent.

The opinion of the court was delivered by

COLEMAN, R.B., J.A.D.

On leave granted, the State appeals from an interlocutory order determining evidentiary issues relating to allegations of sexual abuse. Proceedings in the Law Division were stayed pending appeal. After hearings conducted on March 20 and 22, 2007, in the Law Division, Passaic County, the court issued an order granting the motion of defendant B.M. (a) to admit during cross-examination evidence that the ten-year-old complainant, T.F., had also made accusations of sexual abuse against three of her cousins, Q.M., J.H. and S.F., and (b) to exclude rebuttal evidence that the three cousins, all juveniles, had entered guilty pleas to sexual offenses charged as a result of T.F.'s accusations. The order also memorialized the court's intention to instruct the jurors that "Q.M., J.H. and S.F. may or may not have been charged, prosecuted or adjudicated [and that] shall not enter into [the] deliberations."

We affirm the court's determination to permit defendant to elicit on cross-examination that T.F. had also accused others of sexual assault, but we reverse and remand for further consideration the

decision to exclude rebuttal evidence by the State concerning the guilty pleas of the other alleged assailants in the event defendant opens the door by his cross-examination. We agree that a limiting instruction probably will be necessary if these areas of inquiry are explored, but that instruction must be fashioned in light of the nature of the proofs actually allowed.

Defendant B.M., at age seventeen, was initially charged as a juvenile in a complaint in the Chancery Division, Family Part, Passaic County, alleging conduct which, if committed by an adult, would constitute first degree aggravated sexual assault, *N.J.S.A.* 2C:14–2a(1) (count one), and second degree sexual assault, *N.J.S.A.* 2C:14–2b (count two). On April 25, 2005, an order was entered in the Family Part waiving its jurisdiction over defendant and referring the matter for further proceedings in the Law Division, Criminal Part.

The facts relevant to our review of the evidentiary rulings in the Law Division are not in dispute. In November 2004, the victim, T.F., disclosed to her mother that four of T.F.'s cousins had committed sexual acts upon her between July 2003 and July 2004. There is no indication of concerted or collaborative conduct by any of the actors. Each of the acts was alleged to have occurred separately and independently of the others. In a videotaped interview conducted by a child interview specialist within the prosecutor's office, T.F. alleged that three of the cousins had initiated vaginal intercourse with her and the fourth cousin had pursued anal intercourse. Her general description of the events was similar. She claimed that on each occasion, the actor pulled down his pants and then removed her pants. She never saw the private parts of the actors, but each actor achieved penetration.

Q.M., J.H. and S.F. entered guilty pleas to charges in juvenile court; however, defendant B.M. filed a pretrial motion in the Law Division, seeking to admit evidence that the victim had made accusations against three other persons and to exclude any reference to the dispositions of those accusations. The State took the position that the Rape Shield Statute, *N.J.S.A.* 2C:14–7, should

bar any reference to the victim's prior sexual conduct, and hence, the jurors should not learn of any other accusations T.F. may have made against other sexual abusers. In the alternative, the State argued that if evidence of the other sexual assaults was to be admitted, then, evidence of the disposition of the charges also should be admitted, to give the complete picture.

The court granted defendant's motion, reasoning as follows:

[T]his is a statutory sex assault, so there's no issue of consent here. But because all these—all these incidents occurred within a short period of time from each other and because the descriptions are similar in the way they occurred, I think it would be a violation of the Defendant's right of confrontation if I didn't let him raise those issues. That these incidents occurred at the same period of time.

It's almost as though, as far as like a prior act, they're almost not prior acts, they're contemporaneous, when you look at the period of time where these three cousins or four cousins, I'm sorry were sexually—allegedly sexually assaulting [the victim.]

So I'm going to permit it.

When the assistant prosecutor sought clarification at a hearing two days later, the court reiterated its ruling by stating

Well, the way I view this, the reason that I ruled the way I ruled, ... is this, that this really, to me when I look at it, it's victimization by—alleged victimization by a group of cousins, four of them, during a period of time. It's not an extended period of time. Correct me if I'm wrong, it's about a year, it looked like.

. . . .

That's number one. So it's all kind of the same course of conduct by this group. Number two, there are a lot of similarities in the description that she gives of the sexual assaults. That is she's usually asleep someplace, in a bedroom or some-where. Someone walks in, draws down her pants, gets on top of her and inserts their penis in her. And it seems to follow that pattern.

. . . .

Now I'm permitting under the Sixth Amendment from the Defense's standpoint to say well look, you know, this is something that she has said—she uses this description in the same way.

Then the slippery slope that we get into is whether or not if the jury then says well, wait a minute, okay well what happened to the others. Then you're—it puts the court in a tough situation.

For me to get to the point that I'm at in terms of letting this testimony in, I'm clearly convinced that these other acts did happen. In fact, I know that they pled guilty to it, so beyond a reasonable doubt.

We granted the State's motion for leave to take an interlocutory appeal, and the trial has been delayed while we consider the issues

raised. In the appeal, the State makes the following arguments in its brief:

POINT I: THE TRIAL COURT COMMITTED A CLEAR ERROR OF JUDG-MENT IN ADMITTING EVIDENCE OF THE VICTIM'S SEXUAL ABUSE ALLEGATIONS AGAINST THREE OF HER COUSINS, AS SUCH ALLEGA-TIONS WERE TRUE AND WERE NOT RELEVANT TO IMPEACH THE VICTIM'S CREDIBILITY.

POINT II: THE TRIAL COURT CLEARLY ERRED IN FAILING TO REC-OGNIZE THAT SUBSTANTIAL PREJUDICE WOULD RESULT FROM AD-MITTING EVIDENCE OF THE VICTIM'S OTHER ALLEGATIONS WITH-OUT ALSO DISCLOSING THE FACT THAT THE OTHER ACTORS PLEADED GUILTY.

By contrast, defendant argues (1) that the trial court correctly ruled that evidence of allegations of similar contemporaneous sexual abuse made by the victim about others is relevant, and (2) that the trial court correctly denied the State's request to introduce evidence that the other three actors were charged and entered guilty pleas.

After carefully considering the contentions of the parties and the applicable law, we decline to disturb the court's exercise of discretion to allow the defendant to elicit on cross-examination evidence concerning T.F.'s accusations against persons other than defendant, but we reverse and remand the decision to exclude from the State's potential rebuttal any reference to the disposition of the other sexual assault allegations. We direct that that evidentiary decision be reconsidered in light of *State v. James,* 144 *N.J.* 538, 677 *A.*2d 734 (1996) and in light of the "opening the door" doctrine.

In addressing the applicable scope of our review, we recognize that "[a] trial court's determination on the admissibility of evidence in general ... is entitled to great deference and ordinarily should not be disturbed unless it is 'wide of the mark.'" *State v. Fortin,* 189 *N.J.* 579, 597, 917 *A.*2d 746 (2007); *see State v. Marrero,* 148 *N.J.* 469, 483, 691 *A.*2d 293 (1997) (a trial court's conclusion should be disturbed only where it was a clear error of judgment). Moreover, "the trial court's determination on the admissibility of defensive other-crimes evidence [is] 'highly discre-

tionary,' depending as it does on the weighing and balancing of the various *Rule* 403 factors." *State v. Cook,* 179 *N.J.* 533, 567, 847 *A.*2d 530 (2004).

> [t]he standard for introducing defensive other-crimes evidence is lower than the standard imposed on "the State when such evidence is used incriminatorily [because] when the defendant is offering that proof exculpatorily, prejudice to the defendant is no longer a factor, and simple relevance to guilt or innocence should suffice as the standard of admissibility."
>
> [*Id.* at 566, 847 *A.*2d 530 (quoting *State v. Garfole,* 76 *N.J.* 445, 452–53, 388 *A.*2d 587 (1978)).]

I. *The Admission of other Sexual Allegations and the Rape Shield Statute.*

"In response to problems surrounding the reporting and prosecution of sexual assault cases, legislatures throughout the United States, including New Jersey, have enacted rape shield laws." *State v. Budis,* 125 *N.J.* 519, 528, 593 *A.*2d 784 (1991). "Those laws represent a legislative response to the common law rule permitting cross-examination of a rape victim about her prior sexual conduct." *Ibid.* In addition to protecting victims of sexual assault from excessive cross-examination, thereby encouraging them to report the abuse, rape-shield statutes preserve the integrity of a trial by guarding against the improper use of evidence of the victim's prior sexual experience. *Id.* at 529, 593 *A.*2d 784.

According to the New Jersey Rape Shield Statute, *N.J.S.A.* 2C:14–7, any defendant who seeks, for any purpose, to admit evidence of the victim's previous sexual conduct must apply for an order of the court before the trial or preliminary hearing. *N.J.S.A.* 2C:14–7a. The court must then conduct a hearing to determine the admissibility of such evidence, guided by the following statutory standards:

> [i]f the court finds that evidence offered by the defendant regarding the sexual conduct of the victim is relevant and highly material and meets the requirements of subsections c. and d. of this section and that the probative value of the evidence offered substantially outweighs its collateral nature or the probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the victim, the court shall enter an order setting forth with specificity what evidence may be introduced and the nature of the questions

which shall be permitted, and the reasons why the court finds that such evidence satisfies the standards contained in this section.

[*Ibid.*]

The order from which the State has been permitted to appeal was entered pursuant to the procedure prescribed for cases implicated by the Rape Shield Statute. In this instance, the order was entered in explicit consideration of the defendant's asserted constitutional right of confrontation and cross-examination. Although the Court has observed that the right of confrontation is not absolute, it has also observed that "the right to confront and cross-examine accusing witnesses is 'among the minimum essentials of a fair trial.'" *Budis, supra,* 125 *N.J.* at 531, 593 *A.*2d 784 (quoting *Chambers v. Mississippi,* 410 U.S. 284, 294–95, 93 S.Ct. 1038, 1045, 35 *L.Ed.*2d 297, 308 (1973)); *see also Cook, supra,* 179 *N.J.* at 567, 847 *A.*2d 530 (acknowledging a lower standard of admissibility for defensive evidence proffered by a criminal defendant).

Accordingly, we must defer to the trial judge's determination to allow defendant to attempt to impeach the complainant by referring to acts by others, which ordinarily would not be admissible if offered by the State. *See N.J.R.E.* 404(b). With regard to weighing the probative value of the evidence against the potential for undue prejudice, the trial court concluded that the similarity between the allegations made by T.F. against all four of the cousins she accused of sexual assault raises questions about her credibility that warrant consideration by the jury. We are satisfied the evidence of other alleged assaults meets the simple relevance test of *Cook, supra,* 179 *N.J.* at 567, 847 *A.*2d 530, and *Garfole, supra,* 76 *N.J.* at 452–53, 388 *A.*2d 587, and that the court appropriately exercised its discretion to admit such evidence so that defendant may vindicate his right to confront his accuser.

■ In addition, defense counsel maintained that T.F. fabricated the charge against defendant. Counsel asserted that "[the victim] made it up one time ... perhaps and named four people. She's not telling the truth as to [defendant].... It's relevant

because [the jury has] to make a decision as to whether what she said [defendant] did is believable." We have previously recognized that false allegations are not protected by the Rape Shield Statute. *State v. Ross,* 249 *N.J.Super.* 246, 252, 592 *A.2d* 291 (App.Div.1991); *State v. Bray,* 356 *N.J.Super.* 485, 493–94, 813 *A.*2d 571 (App.Div.2003).

> Where the trial court is satisfied that the victim has made allegations of sexual misconduct by others in the past that are probably false, the evidential preclusions of the Rape Shield Law are inapplicable, since "false accusations" cannot constitute "previous sexual conduct" as defined in *N.J.S.A.* 2C:14–7f.
>
> [*Bray, supra,* 356 *N.J.Super.* at 495, 813 *A.*2d 571.]

Notwithstanding counsel's arguments, the trial court here did not find that T.F.'s allegations of sexual misconduct by others were probably false. Indeed, he indicated he was "clearly convinced that these other acts did happen." In that regard, this matter is similar to *Budis.*

In *Budis, supra,* the Court acknowledged the tension that exists between the Rape Shield Statute and a defendant's constitutional right to confront accusing witnesses. 125 *N.J.* at 524, 593 *A.2d* 784. Budis, who had been indicted on two counts of aggravated sexual assault upon his cousin's nine-year-old daughter, sought to cross-examine the child and the investigating detective about the child's earlier accusation against her stepfather for similar incidents of sexual assault. The State conceded the occurrence of the prior acts and their close resemblance to the charges against Budis. *Id.* at 534, 593 *A.2d* 784. The defendant, however, denied that he ever had or attempted to have vaginal intercourse with the child. *Ibid.* His defense was not that the child fabricated the two incidents, but that she had attempted to initiate them and he had promptly stopped her. *Id.* at 537, 593 *A.2d* 784.

Under such circumstances, the Court recognized that evidence of the alleged victim's truthful allegations of prior abuse by her stepfather was relevant in two ways—first, to rebut the inference that the child acquired the knowledge to describe sexual matters from her experience with defendant and, second, to show she had the knowledge to initiate the sexual acts as defendant described in

his statement and testimony. *Id.* at 534, 593 *A.*2d 784. In addition, the Court found the evidence could, on balance and with an instruction as to its limited purpose, be admitted without undue prejudice. *Id.* at 540, 593 *A.*2d 784.

The *Budis* Court determined that the trial court had improperly restricted defense counsel's cross-examination, thereby preventing the jury from learning that the child's stepfather, and not the defendant, might have been the source of her knowledge of vaginal and oral sex. *Id.* at 541, 593 *A.*2d 784. Because the Court could not say that the omission of that evidence, so crucial to the credibility of defendant's version of his encounters with the child, was harmless error, the matter was remanded for a new trial. *Ibid.*

The trial judge in this case relied on the *Budis* rationale as a basis for his decision, accepting the premise that the similarity of the alleged assaults might be relevant to show a potential source of T.F.'s knowledge of the sexual acts she described and to rebut any inference that such knowledge came from her alleged contact with defendant. In reaching the decision that the evidence could be introduced in spite of the State's objection that it should be excluded under the Rape Shield Statute, the court clearly assumed that the allegations against the other cousins were most probably true. Indeed, the judge stated:

> For me to get to the point that I'm at in terms of letting this testimony in, I'm clearly convinced that these other acts did happen. In fact, I know that they pled guilty to it, so beyond a reasonable doubt.

Under such circumstances, defendant's actual purpose in seeking to inform the jury of the complainant's accusations against others is unclear and subject to a few possible trial strategies and arguments, but it was appropriate for the trial court to accord latitude to the defendant. Whether the accusations were true or false, they could be relevant and probative to a defense B.M. may wish to pursue. For example, apart from contending T.F. fabricated her claim against him, defendant contends the very similarity of all the charges brings into question her veracity and the basis for her knowledge of sexual matters. Even if T.F. made

truthful allegations against the others, defendant persists in his argument that she has made false charges against him. The jury may or it may not agree, however, the latitude should be accorded to the defendant to formulate his defense.

## II. *The Admission of the Guilty Pleas and Fundamental Fairness.*

■ That latitude is, however, not boundless. A defendant's decision to introduce certain evidence may trigger the right of the State to rebut any unfair implications of that evidence.

Ultimately, the court's order would not allow the State to offer rebuttal evidence that Q.M., J.H. and S.F. were charged with sexual offenses against T.F., or that they had entered guilty pleas to those charges. The reason for that decision was not fully explored or explained on the record. Moreover, in his respondent's brief, defendant compares the situation to that in which one defendant is tried after the cases against co-defendants have been resolved. He asserts that there is no case law that entitles either side to introduce evidence of the disposition of the cases against the co-defendants and, by extension, against the other alleged sexual abusers in this case.

■■ Actually, a guilty plea of a co-defendant who testifies is admissible to affect his credibility. *State v. Murphy,* 376 *N.J.Super.* 114, 122, 869 *A.*2d 445 (App.Div.2005). However, "[w]hen evidence of the guilty plea of a co-defendant is admitted at trial, the trial judge must provide a cautionary instruction as to the limited use of the testimony for credibility purposes . . . [and] also the prohibited use of the testimony," as substantive evidence of the defendant's guilt. *Id.* at 122–23, 869 *A.*2d 445. We recognize that this case does not involve actual co-defendants, but part of the court's rationale for allowing defendant to use evidence of the alleged assaults was that "there are a lot of similarities in the description that she gives." Defendant should not, however, be permitted to insist that she is lying about the sexual contact with him by implying unfairly that she lied as to the others.

 Defendant also asserts, without citation to authorities, that the admission of guilty pleas or the transcripts of such pleas would totally violate his right to confront and to cross-examine witnesses. We do not agree. As previously noted, the right to confront and cross-examine accusing witnesses is not absolute, and as was recognized in *Budis, supra*, it "may, in appropriate circumstances, bow to competing interests." 125 *N.J.* at 531, 593 *A.*2d 784. Fairness and the enhancement of the truth-seeking process are such competing interests.

Defendant concedes, for example, that the State may call the other actors as witnesses at the trial if it deems such is necessary to bolster or rehabilitate the credibility of T.F. Notably, that concession by defendant goes beyond the bounds of the order from which the State has been permitted to appeal. The order provides more restrictively that "the State will not be permitted to introduce evidence of the fact that Q.M., J.H. and S.F. entered guilty pleas in the family court[.]" That aspect of the order, to our minds, is overly broad and a deviation from the exercise of sound judicial discretion. It would permit defendant to allude to T.F.'s similar accusations against others, assert or insinuate that they are false and yet, leave the jurors to speculate whether or not there was any truth or substance to those accusations. Defendant's position and the court's order would likewise preclude the State from showing that those other accusations, rather than having been proven false or frivolous, were likely true and had actually resulted in adjudications of delinquency against the alleged actors. Such a result runs counter to the sense of fairness our cases and rules strive to achieve.

 In *James, supra*, the Court explained the difference between certain doctrines of fairness, such as "opening the door", "completeness," and "curative admissibility." 144 *N.J.* at 553–55, 677 *A.*2d 734. The Court's explanation of "opening the door" is, we believe, especially instructive for this case.

The "opening the door" doctrine is essentially a rule of expanded relevancy and authorizes admitting evidence which otherwise would have been irrelevant or

inadmissible in order to respond to (1) *admissible evidence* that generates an issue, or (2) *inadmissible evidence* admitted by the court over objection. The doctrine of opening the door allows a party to elicit otherwise inadmissible evidence when the opposing party has made unfair prejudicial use of related evidence. That doctrine operates to prevent a defendant from successfully excluding from the prosecution's case-in-chief inadmissible evidence and then selectively introducing pieces of the evidence for the defendant's own advantage, without allowing the prosecution to place the evidence in its proper context.

[*Id.* at 554, 677 *A.*2d 734 (citations omitted).]

The Court expressly noted in *James* that "[t]he 'opening the door' rule has its limitations." *Ibid.* It stated, "[f]or example, evidence is still subject to exclusion where a court finds that the probative value of the otherwise inadmissible responsive evidence 'is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury. . . .' *N.J.R.E.* 403." *Ibid.*; *see also State v. Vandeweaghe,* 177 *N.J.* 229, 238, 827 *A.*2d 1028 (2003) (noting that this doctrine is used "'to prevent prejudice,' and may not 'be subverted into a rule for [the] injection of prejudice.'").

We have indicated that considerations of fairness and completeness militate toward the admission of evidence relating to the disposition of the accusations if evidence of the accusations is admitted, but we would be remiss if we did not likewise express our awareness that there may be many reasons for an accused's decision to plead guilty other than his guilt. *State v. Boone,* 66 *N.J.* 38, 49, 327 *A.*2d 661 (1974); *State v. Tsilimidos,* 364 *N.J.Super.* 454, 459, 837 *A.*2d 373 (App.Div.2003); *State v. LaResca,* 267 *N.J.Super.* 411, 421, 631 *A.*2d 986 (App.Div.1993) (finding the same reasoning in a municipal court setting).

He may wish to spare his family the unfavorable publicity attendant upon a trial. He may, for private reasons, prefer to plead guilty rather than have his past paraded before the world. He may fear that a trial may result in a relative or friend being charged as an accessory or in the defendant's being charged with other crimes.

[*Boone, supra,* 66 *N.J.* at 50 n. 9, 327 *A.*2d 661 (quoting *State v. Weekly,* 41 *Wash.*2d 727, 252 *P.*2d 246, 249 (1952) (Donworth, J., dissenting)).]

Thus, the mere existence of a guilty plea is not conclusive, but it may be probative of the facts essential to a conviction on the

charge to which the plea was entered. A careful parsing of the plea hearings in the delinquency proceedings may allow the trial court to evaluate the reason each accused person pleaded guilty.

Of course, if the judge determines the complainant's allegations are probably false, they could be admitted according to the narrow exception to *N.J.R.E.* 608 carved out by *State v. Guenther*, 181 *N.J.* 129, 854 *A.*2d 308 (2004).[2] If the allegations are likely true, then the Court must reassess whether evidence tending to reveal or support that truth should be allowed.

In summary, we affirm the court's exercise of discretion to allow defendant to introduce evidence of T.F.'s accusations against her other cousins. However, we reverse, remand and instruct the trial court to reconsider whether, in the event defendant does elect to introduce evidence of those accusations, fairness and the integrity of the judicial process might dictate that evidence of the guilty pleas or other evidence tending to rebut the inference of falsity should be allowed in one form or another. In this regard, the judge should be mindful of the doctrine of fairness and the "opening the door" doctrine discussed in this opinion and should balance and weigh the probative value against the risk of the appropriate prejudicial factors to be considered under *N.J.R.E.* 403.

---

[2] In *Guenther, supra,* the Court "carv[ed] out a narrow exception to the common law rule embodied in *N.J.R.E.* 608 for the purpose of permitting the jury to consider relevant evidence—in clearly defined circumstances—that may affect its estimation of the credibility of a key witness." 181 *N.J.* at 159, 854 *A.*2d 308. The Court explained that trial courts, in deciding whether to permit the impeachment of a victim—witness who allegedly made a prior false accusation, must first conduct an admissibility hearing pursuant to *N.J.R.E.* 104. *Id.* at 157, 854 *A.*2d 308. Consistent with the Court's suggestion in *Guenther, N.J.R.E.* 608 was amended, effective July 1, 2007, to include a new paragraph (b), which provides "[t]he credibility of a witness in a criminal case may be attacked by evidence that the witness made a prior false accusation against any person of a crime similar to the crime with which defendant is charged if the judge preliminarily determines, by a hearing pursuant to Rule 104(a), that the witness knowingly made the prior false accusation."

Affirmed in part; reversed and remanded in part. We do not retain jurisdiction.