RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2137-15T4

T.F.,

 Plaintiff-Respondent,

v.

F.S.,

 Defendant-Appellant.

_________________________________

 Argued December 20, 2016 – Decided July 7, 2017

 Before Judges Leone and Vernoia.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Burlington
 County, Docket No. FV-03-0797-16.

 Daniel E. Rybeck argued the cause for
 appellant (Weir & Partners, LLP, attorneys;
 Mr. Rybeck, on the briefs).

 Brenda R. Maneri argued the cause for
 respondent (Sitzler and Sitzler, attorneys;
 Ms. Maneri, on the brief).

PER CURIAM
 Defendant F.S. appeals from a December 14, 2014 final

restraining order (FRO). We vacate the FRO and remand for a new

hearing.

 I.

 Plaintiff T.F. and defendant began dating in 2012, and started

living together in 2013. They broke up on November 9, 2015, when

defendant moved out.

 On November 14, 2015, plaintiff filed her original complaint

under the Prevention of Domestic Violence Act of 1991 (Act),

N.J.S.A. 2C:25-17 to -35. She alleged that after they broke up,

defendant texted her accusing her of taking his car keys. When

she texted him telling him not to contact her again, he sent her

three text messages and an e-mail, which she charged constituted

the predicate act of harassment. She said there was no history

of domestic violence. A municipal court judge issued a temporary

restraining order (TRO).

 On November 18, 2015, plaintiff filed her first amended

complaint seeking an FRO based on the originally-charged predicate

act of harassment. However, she also alleged a prior history of

domestic violence in 2013, 2014, and 2015. The prior history

included an allegation defendant performed unwanted oral sex on

her and then vaginally raped her on October 31, 2015. She alleged

harassment and sexual assault charges were pending. Another

 2 A-2137-15T4
municipal court judge noted the complaint was being "amended for

past history."

 On December 1, 2015, plaintiff filed her second amended

complaint adding sexual assault as a predicate act. She stated:

"Initial predicate included a sexual assault incident but the box

for sexual assault crime was not checked off." She also stated

she had to amend the TRO to include sexual assault because the

police "wanted to leave it off the initial TRO in hopes of doing

a consensual intercept with [defendant]." The trial court allowed

plaintiff to amend "to add to predicate and history."1

 The trial court held the FRO hearing on December 10, 2015.

Plaintiff testified as follows about the alleged October 31 sexual

assault. She and defendant were having an in-home date night when

she took a call from a male graduate school classmate. Defendant

became angry. Plaintiff apologized and went to bed. Defendant

grabbed her arm, flipped her onto her back, and forcefully jammed

his tongue down her throat. She told him to stop, but he kept

butting his face into her face and tried unsuccessfully to

penetrate her vaginally. He performed oral sex on her, and she

1
 Plaintiff also listed as another predicate act of harassment
that defendant gave her "intimidating looks of disgust" in the
courthouse on November 19, 2015 and tried to leave with her.

 3 A-2137-15T4
told him to stop. He asked her to perform oral sex on him, but

she refused. He then penetrated her vaginally.

 Plaintiff testified that the next day she told defendant she

was sore and torn from the vaginal penetration. She also testified

she sought medical attention on November 6, 2015.

 Plaintiff testified she did not report the sexual assault to

the police initially because she "was petrified" defendant would

retaliate and she needed to get her family involved. She testified

she first reported the sexual assault to the police on November

10, 2015.2

 On redirect, plaintiff testified she told the police about

the sexual assault on November 9 and 10, 2015, but an officer did

not want her to include the sexual assault in the original

complaint because the police were considering recording with

plaintiff's consent a conversation between plaintiff and

defendant's knowledge a consensual intercept and "did not want to

let [defendant] know that there was an active investigation" into

the sexual assault. She testified she amended the complaint to

mention the sexual assault, but a court officer or domestic

2
 Plaintiff did not testify on direct about the originally-charged
predicate act of harassment by text and e-mail. She briefly
testified defendant gave her a "death glare" in the courthouse on
November 19. He disputed her version.

 4 A-2137-15T4
violence liaison did not check off the sexual assault box, so

plaintiff had to amend the complaint again.

 Defendant testified he and plaintiff had consensual

intercourse on October 31 and he did not do anything forcibly or

against her will. He testified that, on the day they broke up,

she said she was going to call the police and say he assaulted

her.

 At the conclusion of the December 10 FRO hearing, after

closing arguments, the trial court deferred issuing its opinion

until December 14. The court stated it was concerned with "the

delay in – alleging that the sexual assault took place" and "the

fact that this sexual assault case was not presented to the Court

by way of a temporary restraining order until much later."

Plaintiff's counsel offered to call the detective who took

plaintiff's statement; the court said it would "love to hear from"

him. Defendant's counsel asked to be allowed to confront the

detective and to subpoena rebuttal witnesses.

 On December 14, plaintiff called Detective Damiano DePinto.

DePinto provided the parties with a police report concerning his

and his department's investigation of plaintiff's allegations. He

then testified as follows. He did not become involved with the

investigation until November 14, when he took plaintiff's

statement. He was not involved on November 10 when plaintiff made

 5 A-2137-15T4
her initial report. However, based on his "reading the report,"

he testified she complained of harassment and sexual assault but

did not apply for a TRO. On November 14, she applied for a TRO,

and "the Judge was advised of the entirety of what she was

alleging, but for investigative reasons, we had left off the

allegations of sexual assault and just left the harassment on

there." The judge found no probable cause for the criminal

complaints but granted the TRO. A day or two later, the

prosecutor's office indicated the plan to record a conversation

between plaintiff and defendant "couldn't be done with the

restraining order in effect."

 On cross-examination, defendant's counsel marked the police

report DePinto had just provided. The trial court sustained

objections to defense counsel's attempt to use the report to cross-

examine Detective DePinto and refused to allow him to call DePinto

or plaintiff in rebuttal to cross-examine them with the report.

 The trial court credited plaintiff's testimony that defendant

had sexually assaulted her. The court also found plaintiff's

delay in reporting the sexual assault "was driven by the

prosecutor's office, as well as the police department." The court

issued an FRO.

 6 A-2137-15T4
 II.

 Defendant argues the trial court erred in refusing to allow

testimony regarding the police report and its information about

plaintiff's reasons for the delay in filing a complaint alleging

sexual assault. We must hew to our standard of review.

"'[C]onsiderable latitude is afforded a trial court in determining

whether to admit evidence, and that determination will be reversed

only if it constitutes an abuse of discretion.'" State v.

Kuropchak, 221 N.J. 368, 385 (2015) (citation omitted). "Under

that standard, an appellate court should not substitute its own

judgment for that of the trial court, unless 'the trial court's

ruling "was so wide of the mark that a manifest denial of justice

resulted."'" Ibid. (citations omitted).

 We find the trial court abused its discretion. Although the

police report corroborated some aspects of plaintiff's testimony,

it was inconsistent with her claim that she did not initially seek

a TRO for sexual assault because the police told her they hoped

to conduct a consensual intercept with defendant.

 The November 10 portion of the report, prepared by Officer

Glen Horay, stated as follows. Plaintiff told Horay that defendant

forced her to have sexual intercourse on October 31, but that she

did not report the incident prior to November 10 "because she

wanted to speak to her counselor first." Horay told plaintiff she

 7 A-2137-15T4
could apply for a TRO immediately, but she "chose not to pursue

any charges against [defendant] at this time," and she signed a

form "declining an immediate restraining order." She told Horay

"she was going to wait and see if [defendant] has any further

contact with her and that if he does, she would respond back to

apply for a restraining order." She asked Horay not to contact

defendant about her allegations "because she is hoping that he

just leaves her alone." Horay concluded no police action was

required.

 A November 24 portion of the report prepared by Horay stated

that on November 14 plaintiff said she wanted to apply for a TRO

and pursue charges against defendant. The report did not state

that the police told plaintiff not to include the sexual assault

allegations in her initial complaint because the police were trying

to do a consensual intercept of defendant.

 When defendant's counsel tried to cross-examine DePinto about

plaintiff's "wait and see" statement, the trial court sustained

the objection because the statement was referenced in Horay's

report, not DePinto's report, and DePinto had "no knowledge of

that." However, plaintiff's counsel already elicited DePinto's

testimony about plaintiff's initial statements to Horay on

November 10.

 8 A-2137-15T4
 The trial court also would not allow defendant's counsel to

cross-examine DePinto about the portion of the report DePinto

prepared on November 20. DePinto's portion of the report related

plaintiff's November 14 statements about the sexual assault,

including a statement that she sought treatment from a medical

provider on November 6 but did not tell the provider she was

sexually assaulted until the yeast and bacterial results

"eventually" came back. When defendant's counsel tried to ask

DePinto if plaintiff made that statement, the court sustained an

objection, ruling DePinto was called just to determine "whether

there was a substantial delay or a delay as a result of police

investigation."

 Defendant's counsel asked to call DePinto on rebuttal, but

the trial court ruled: "There's no rebuttal. It's just a matter

of making a determination as to whether or not . . . this complaint

of sexual assault was delayed by the police or by the Judge or by

. . . the plaintiff." When defendant's counsel pointed out he had

just received the information in the report, the court ruled it

would not "allow any further examination of the officer. He's

here for one purpose and one purpose only."

 The trial court also precluded cross-examination of plaintiff

about the information in the report which was inconsistent with

her testimony. Defendant's counsel argued he had no opportunity

 9 A-2137-15T4
to cross-examine plaintiff with the information in the newly-

provided report. He asked to call plaintiff in rebuttal. The

court denied that request, stating: "[W]hen you were last here, I

heard all the testimony, and there was my request with regard to

having . . . the detective here to make a determination as to the

delay"; "that's the extent of it"; and "[i]t's over and done with,

counsel." However, after hearing "all the testimony" presented

by both parties on December 10, the court allowed plaintiff to

reopen the record on December 14 to present additional testimony

from DePinto which the court thought had been lacking, but

prevented defendant from presenting any additional testimony in

rebuttal.

 A trial court has discretion on whether to reopen the record,

but "consideration should be given to the prejudice to the opposing

party." State v. Cullen, 428 N.J. Super. 107, 111-12 (App. Div.

2012) (citing State v. Menke, 25 N.J. 66, 71 (1957)). A defendant

should not be "precluded from offering such rebuttal proofs as he

might choose" that are responsive and admissible. See State v.

Menke, 44 N.J. Super. 1, 7 (App. Div.), aff’d, 25 N.J. 66 (1957);

see State v. Sturdivant, 31 N.J. 165, 178 (1959) (upholding the

admission of additional evidence where "the trial court offered

the defense an opportunity to produce surrebuttal evidence"),

cert. denied, 362 U.S. 956, 80 S. Ct. 873, 4 L. Ed. 2d 873 (1960).

 10 A-2137-15T4
 Similarly, a trial court may "exercise reasonable control

over the mode and order of interrogating witnesses." N.J.R.E.

611(a). "We recognize that 'the trial court has a wide range of

discretion regarding the admissibility of proffered rebuttal

evidence.'" Casino Reinvestment Dev. Auth. v. Lustgarten, 332

N.J. Super. 472, 497 (App. Div.) (citation omitted), certif.

denied, 165 N.J. 607 (200). However, defendant's proposed

"rebuttal" testimony from DePinto and plaintiff "both challenged

and contradicted testimony produced for the [plaintiff]" and "was

neither cumulative nor repetitive of testimony offered in

[defendant]'s case." See id. at 497, 498 (finding the exclusion

of "rebuttal testimony was an abuse of discretion").

 Further, "[r]ebuttal evidence is permissible when necessary

because of new subjects introduced on direct or cross-examination

of [the] witnesses." State v. Cook, 330 N.J. Super. 395, 418

(App. Div.), certif. denied, 165 N.J. 486 (2000). Here, not only

did DePinto's testimony introduce new subjects, but he produced a

report previously unknown to defendant which was inconsistent with

plaintiff's testimony.

 Plaintiff stresses the trial court's statements that it

wanted to hear from DePinto about "the delay in filing" and about

"when the sexual assault was recorded in relation to the TRO being

filed." Although ordinarily "[c]ross-examination should be

 11 A-2137-15T4
limited to the subject matter of the direct examination and matters

affecting the credibility of the witness," N.J.R.E. 611(b),

"nevertheless, reasonable latitude should be permitted to assure

[the cross-examination's] inclusion of relevant material."

Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, 1991

Supreme Court Committee Comment on N.J.R.E. 611 (2016). The cross-

examination sought by defendant was relevant and went to what the

court had identified as a key issue – plaintiff's delay in

reporting the alleged sexual assault. Indeed, defendant's

question about plaintiff's decision not to seek a TRO on November

10 was within the scope of DePinto's testimony on direct.

 The trial court disallowed that question because it asked

DePinto about the portion of the report prepared by Officer Horay,

but plaintiff had already opened the door by asking DePinto about

plaintiff's statement on November 10 even though he lacked personal

knowledge and was basing his testimony on Horay's portion of the

report. "The 'opening the door' doctrine is essentially a rule

of expanded relevancy and authorizes admitting evidence which

otherwise would have been irrelevant or inadmissible in order to

respond to (1) admissible evidence that generates an issue, or (2)

inadmissible evidence admitted by the court over objection." State

v. James, 144 N.J. 538, 554 (1996). By questioning DePinto about

plaintiff's statement to Horay about which DePinto had no personal

 12 A-2137-15T4
knowledge, plaintiff "open[ed] the door to introduction of other

parts of that statement." State v. Farthing, 331 N.J. Super. 58

(App. Div.), certif. denied, 165 N.J. 530 (2000). Allowing

plaintiff to elicit that plaintiff told the police about the sexual

assault on November 10, while precluding defendant from showing

why she chose not to seek a TRO on November 10, "runs counter to

the sense of fairness our cases and rules strive to achieve."

State v. B.M., 397 N.J. Super. 367, 380-81 (App. Div. 2008).

 "[O]rdinary due process protections apply in the domestic

violence context, notwithstanding the shortened time frames for

conducting a final hearing[.]" J.D. v. M.D.F., 207 N.J. 458, 478

(2011). Improperly "denying defendant the opportunity to cross-

examine witnesses or to present witnesses violates due process."

Id. at 481 (citing Peterson v. Peterson, 374 N.J. Super. 116, 124-

26 (App. Div. 2005)). Thus, in J.D., our Supreme Court held the

trial court violated due process by not allowing the defendant to

question the plaintiff's boyfriend because the court "decided that

plaintiff's proofs sufficed." Ibid. In Peterson, supra, we held

the trial court erred in not allowing the defendant to cross-

examine the plaintiff and her witness or call witnesses. 374 N.J.

Super. at 124-26. Citing J.D. and Peterson, we recently ruled in

another domestic violence case

 13 A-2137-15T4
 that the trial judge erred when he barred
 plaintiff from calling defendant to the
 witness stand. Neither the rules of procedure
 nor the rules of evidence prohibit a civil
 litigant from calling an adverse party to
 testify. And, even though we recognize that
 trials in domestic violence matters are
 usually brief, loosely-conducted affairs, our
 courts must be vigilant to ensure that
 parties' procedural due process rights are
 maintained.

 [N.B. v. S.K., 435 N.J. Super. 298, 308 n.12
 (App. Div. 2014).]

 Here, the trial court similarly abused its discretion. "The

trial court undoubtedly exercised its judgment with the best of

intentions; however, we are unable to determine to what extent

plaintiff's domestic violence claims might have been successfully

challenged if defendant had not been deprived of his constitutional

right to due process and a fair trial." Peterson, supra, 374 N.J.

Super. at 125. Thus, we must vacate the FRO and remand.

 III.

 Defendant argues plaintiff failed to offer sufficient

evidence to show a predicate act of domestic violence. To the

contrary, she presented sufficient evidence for the trial court

to find a "sexual assault," which is a predicate act under the

Act. N.J.S.A. 2C:25-19(a)(7); see N.J.S.A. 2C:14-2.3

3
 It is unclear whether the trial court found defendant committed
a predicate act of harassment. The court made no mention of the

 14 A-2137-15T4
 Defendant also contends the trial court erred in determining

that "a restraining order is necessary, upon an evaluation of the

fact[or]s set forth in N.J.S.A. 2C:25-29a(1) to -29a(6), to protect

the victim from an immediate danger or to prevent further abuse."

J.D., supra, 207 N.J. at 475-76 (quoting Silver v. Silver, 387

N.J. Super. 112, 126-27 (App. Div. 2006)). In making that

determination, a court must consider "[t]he previous history of

domestic violence between the plaintiff and defendant, including

threats, harassment and physical abuse." N.J.S.A. 2C:25-29(a)(1);

accord Silver, supra, 387 N.J. Super. at 126.

 Plaintiff testified defendant had a previous history of

domestic violence. In particular, she alleged that on July 19,

2015, he jumped on top of her, angrily butted his head into her

head, and loudly demanded who she was "f**king," making her "very

fearful." That testimony, coupled with her testimony that

defendant sexually assaulted her on October 31, 2015, was

sufficient for the trial court to find an FRO was needed. Indeed,

originally-charged harassment by text and e-mail. The court
mentioned that plaintiff believed there were "some intimidating
observations" on November 19, but made no other findings concerning
that charge. The court later stated "that harassment would be
incorporated in the whole picture of events here, but that the
sexual assault . . . is prevalent in this matter." Neither party
addresses the validity of any harassment finding, nor do we, as
we are remanding for a new hearing in any event.

 15 A-2137-15T4
"one sufficiently egregious action [may] constitute domestic

violence under the Act, even with no history of abuse between the

parties." Cesare v. Cesare, 154 N.J. 394, 402 (1998).4

 Thus, the testimony offered by plaintiff, if credited,

provided sufficient evidence to find a sexual assault and a need

for an FRO. Nonetheless, we must vacate the FRO and remand due

to the trial court's preclusion of the cross-examination and

calling of witnesses to test the credibility of that testimony.

In light of that history, "we direct, in an abundance of caution,

that a different judge be assigned to conduct the new [FRO] hearing

so that credibility assessments may be made anew." State v. Hreha,

217 N.J. 368, 386 (2014).5

4
 Plaintiff also testified as follows. In December 2013, defendant
complimented her "ass" and smacked it hard, leaving a handprint.
He angrily flipped two folding tables during an argument in January
or February 2014. In May 2014, he moved out, then kept trying to
find and talk to her begging for another chance, was told to leave
by her father, and threatened her father. During an argument on
April 4, 2015, defendant bit his knuckle and revved his car engine
when she was in front of the car, scaring her. While assembling
furniture on October 25, 2015, he angrily told her: "You have a
hard f**king head. You do not need a drill." Defendant disputed
plaintiff's version of the prior history. We need not comment or
rely on these prior acts alleged by plaintiff.
5
 As we are remanding, we need not address defendant's assertions
that the trial court relied on a recording it had ruled
inadmissible, misapprehended that there was a "medical assessment"
of the sexual assault, or misstated that defendant "often" tried
to reconcile with plaintiff.

 16 A-2137-15T4
 Vacated and remanded for a new hearing on whether to issue

an FRO. The TRO remains in place. We do not retain jurisdiction.

 17 A-2137-15T4